IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LEAGUE OF WOMEN VOTERS OF
WISCONSIN, PATRICIA ANN
VILLARREAL, SASHA ALBRECHT,

      Plaintiffs,

      v.                              Case No. 19-CV-1029

DEAN KNUDSON, JULIE M. GLANCEY,
ROBERT F. SPINDELL, JR., MARK L.
THOMSEN, ANN S. JACOBS, MARGE
BOSTELMANN, MEAGAN WOLFE,

      Defendants.

---

**BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION AND IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY,
FOR A *PULLMAN* STAY**

---

## INTRODUCTION

Plaintiffs—the League of Women Voters and two registered Wisconsin voters—contend that there is an imminent risk that the Wisconsin Elections Commission (the "Commission") will deactivate over 200,000 voter registrations without notice, in violation of the due process clause. But their claims are premature in light of the still-developing events in Wisconsin state courts.

This case has arisen because of state court litigation that remains ongoing—specifically, a mandamus order by a Wisconsin circuit court directing the Commission to deactivate voter registrations pursuant to a state statute, Wis. Stat. § 6.50(3), which addresses voters who have moved away from their registered address. That order misread the plain language of the statute and so the Commission has appealed it. Apart from that order, the Commission as of the date of this filing has adopted no plan to deactivate any voter registrations. Under these circumstances, Plaintiffs' complaint should be stayed under the abstention doctrine originating in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941) or, alternatively, dismissed as unripe.

Because the state circuit court order may be reversed—at minimum, it remains unclear, for now, how the state litigation will be resolved—it remains speculative whether any deactivations will occur and, if so, what notice, if any,

would be accompany them. Simply put, the Commission may well decide to give notice of any deactivations that may ultimately occur. Claims, like the ones here, are not yet ripe if they rest upon contingent future events. While it is true that those events may develop quickly, the ongoing uncertainty in state court creates a ripeness problem.

Even if dismissal is not warranted, a *Pullman* stay clearly is appropriate. The pending state court litigation could (and should) resolve the state law issue in a way that would obviate the need to consider Plaintiffs' federal due process claims, which is exactly when a *Pullman* stay should be granted. As explained in the Commission's state-court filings, the plain language of Wis. Stat. § 6.50(3) does not obligate the Commission to deactivate voter registrations based solely on the data it has received about potential address changes. Absent either a state law obligation imposed on the Commission or concrete plans by it to deactivate registrations, no due process claim arises based on needing to notify voters before deactivations occur.

For these reasons, this Court should not reach Plaintiffs' preliminary injunction motion. Even if it did, denial would be appropriate. A preliminary injunction is available only upon a showing of "likely" irreparable harm, and the uncertainty surrounding the state court litigation and the Commission's deactivation plans means that too much is unknown to enter a preliminary injunction now.

To be sure, the state court litigation may develop quickly in a way that changes this analysis. But unless and until that happens, there is not enough clarity to proceed now. The case should be dismissed or stayed and Plaintiffs' motion for a preliminary injunction denied.

## STATEMENT OF FACTS

**I.    The Commission contacts Wisconsin voters who may have moved away from their voter registration address.**

Along with 28 other states, Wisconsin participates in the Electronic Registration Information Center ("ERIC"), a private group that uses data from the United States Postal Service and state Departments of Motor Vehicles to help states identify registered voters who have potentially moved from their registered voting address. (Plaintiffs' Proposed Finding of Fact ("PPFOF") 11[1]; Defendants' Proposed Finding of Fact ("DPFOF") 1.) ERIC flags voters whose registration address—provided by the member states—does not match their address listed in these other data sets and provides lists of such voters to member states. (PPFOF 12–13.) ERIC supplied a list of these potential "movers" to Wisconsin in early 2019. (PPFOF 14.)

In June 2019, Commission staff recommended a process for using this "movers" list that, in turn, could be considered by the Commission in its

---

[1] For the purpose of resolving Plaintiffs' motion for a preliminary injunction only, the Commission does not oppose Plaintiffs' proposed findings of fact, except as specified in its separately filed responses and objections to those proposed findings.

decision-making process. It recommended mailing voters on the list asking them to affirm their registration address or re-register at their new address if they had in fact moved. (DPFOF 4.) If a voter did not respond, Commission staff recommended that their registration be deactivated in summer 2021, after voters had multiple election opportunities to affirm their current registration address at their polling places. (PPFOF 18.)[2] Commission staff did not recommend deactivating voters 30 days after sending the mailing, pursuant to Wis. Stat. § 6.50(3).[3] (DPFOF 5.) After a June 2019 meeting, the Commission did not adopt those recommendations in whole, but rather approved a motion that only "[a]uthorize[d] staff to flag files of voters rather than deactivating voters who do not respond to a Movers mailing after 30 days; go forward with WisVote, poll book and MyVote updates; and assess new data before initiating future mailings." (DPFOF 6.)

---

[2] Plaintiffs assert that the Commission adopted a "policy" of deactivating voters after a 12 to 24 month period (Pls.' Br. 7), but they cite only this staff recommendation memo for that so-called "policy." The Commission did not adopt the recommendation, so it remains just that—a recommendation.

[3] Wisconsin Stat. § 6.50(3) provides that "[u]pon receipt of reliable information that a registered elector has changed his or her residence to a location outside of the municipality, the municipal clerk or board of election commissioners shall notify the elector by mailing a notice by 1st class mail to the elector's registration address stating the source of the information. . . . If the elector no longer resides in the municipality or fails to apply for continuation of registration within 30 days of the date the notice is mailed, the clerk or board of election commissioners shall change the elector's registration from eligible to ineligible status."

In October 2019, the Commission mailed the informational notices contemplated in the June 2019 recommendations. (PPFOF 19–20.) As planned, the mailing notified voters that the Commission had received information that their home address potentially differed from their registration address. (PPFOF 21.) It provided voters with information about how to re-register at their new address or how to affirm that they still resided at their registered address. (PPFOF 21.) Because the Commission had not approved deactivations, the mailing did not address potential deactivation as a consequence of not responding to the mailing. (DPFOF 8.)

Commission staff later recognized that "[t]here are no specific statutory directives dictating actions the WEC must take as a result of the ERIC data matching." (DPFOF 9.) Subsequently, at its December 2, 2019, meeting, the Commission approved a motion "direct[ing] staff to pursue legislation establishing specific procedures governing the ERIC Movers mailing and/or granting rulemaking authority to the Commission." (DPFOF 10.)

## II.    The *Zignego* state court action.

On November 13, 2019, three Wisconsin taxpayers and voters sued the Commission and five of its six commissioners in their official capacities in Wisconsin state court, *Zignego v. Wisconsin Election Commission,* No. 19-cv-0449 (Wis. Cir. Ct. Ozaukee Cty.). (PPFOF 25.) These plaintiffs allege that the Commission is violating Wis. Stat. § 6.50(3) by not deactivating the

registration status of voters who did not respond within 30 days after the October 2019 notices were mailed. (PPFOF 25.)

The plaintiffs moved for a temporary injunction or alternatively a writ of mandamus. The Commission opposed the motion, arguing both that Wis. Stat. § 6.50(3) does not apply to it and that the 2019 ERIC data, standing alone, is not reliable information that a voter has moved, as the statute requires for deactivations. The Commission therefore argued that the statute could not supply a legal basis for ordering the Commission to deactivate registrations of the over 200,000 voters who received the October 2019 mailings but had not acted to continue their registrations.

The circuit court held oral argument and issued an oral ruling on December 13, 2019, in favor of the plaintiffs. (PPFOF 26.) It ruled that a writ of mandamus would issue to compel the Commission to comply with Wis. Stat. § 6.50(3) and denied the Commission's oral motion to stay the writ, deferring to the appellate court to grant a stay. The court entered a written mandamus order on December 17, 2019, that reads, in pertinent part:

> Defendant Wisconsin Election Commission is hereby ordered to comply with the provisions of § 6.50(3) and deactivate the registrations of those electors who have failed to apply for continuation of their registration within 30 days of the date the notice was mailed under that provision.

(PPFOF 26.)

The Commission filed a notice of appeal and a motion to stay the writ of mandamus with the Wisconsin Court of Appeals. The appellate court has held the stay motion in abeyance, apparently because the *Zignego* Plaintiffs have since filed a petition to bypass the Court of Appeals in the Wisconsin Supreme Court, which remains pending. Due to the Court of Appeals' decision to hold the motion in abeyance, the Commission on January 8, 2020, moved the Supreme Court to stay the circuit court's mandamus order, and that motion, again, remains pending.

Because the Commission has not yet deactivated any voter registrations, the *Zignego* Plaintiffs have moved the circuit court to hold the Commission in contempt—a hearing on that motion is set for January 13, 2020.

## III.   This federal court action.

On December 17, 2019, Plaintiffs League of Women Voters of Wisconsin and two Wisconsin voters, Patricia Ann Villarreal and Sasha Albrecht, filed this 42 U.S.C. § 1983 due process action against all six commissioners of the Wisconsin Elections Commission and its Administrator, in their official capacities. (Dkt. 1.) They allege that, due to the order in the state court *Zignego* litigation, the Commission must "immediately remove 234,039 registered Wisconsin voters . . . from the voter registration rolls within 30 days of the Commission's mailing of the [2019 ERIC] letter." (Dkt. 1:4 ¶ 7 (emphasis omitted).) Because those voters "were not given notice that they were facing

7

removal from the rolls; nor were they provided notice of the timeline within which to take action to remain registered to vote in Wisconsin," Plaintiffs allege they were deprived of their procedural due process rights. (Dkt. 1:4–5 ¶ 8.)

On December 20, 2019, Plaintiffs filed a motion for preliminary injunction. (Dkt. 7.)

## ARGUMENT

This Court should decline to reach the merits of Plaintiffs' preliminary injunction motion at this time for two reasons: First, the case is, so far, unripe because too many uncertainties remain about whether, when, and how any voter registration deactivations might occur; and second, at a minimum, the case should be stayed pending resolution of the ongoing state court litigation that might avoid the need to address Plaintiffs' federal due process claims. These considerations apply to both of Plaintiffs' due process claims—one based on procedural due process and another based on detrimental reliance—because they both turn on the purported lack of notice before deactivations. If the Court nevertheless reaches the motion, it should be denied because Plaintiffs cannot show likely irreparable harm and that they will likely succeed on the merits, again because the status of deactivations remains unclear.

## I.     This case properly could be dismissed without prejudice because Plaintiffs' claims are not yet ripe.

Under Article III of the Constitution, federal courts have jurisdiction only over "cases" and "controversies." "The ripeness doctrine arises out of the Constitution's case-or-controversy requirement, as claims premised on uncertain or contingent events present justiciability problems." *Church of Our Lord & Savior Jesus Christ v. City of Markham,* 913 F.3d 670, 676 (7th Cir. 2019). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). When a claim is unripe, a federal court lacks subject matter jurisdiction over it. *See Flying J Inc. v. City of New Haven*, 549 F.3d 538, 544 (7th Cir. 2008). While circumstances could change, Plaintiffs' due process claims here are as-yet unripe and could be dismissed without prejudice for two reasons.

First, Plaintiffs can only speculate that deactivations will occur soon. Without deactivations, Plaintiffs will have no due process claim—the Commission obviously need not notify voters prior to deactivating their registrations if no deactivations will occur. The only potentially foreseeable deactivations—those mandated in the state court *Zignego* litigation—should not occur because state appellate courts should reverse the circuit court's plainly erroneous mandamus order. That order is the only source of an

impending deactivation obligation, and the Commission has presented strong statutory arguments for its reversal on appeal. Of course, interim developments in *Zignego* could change the landscape—but unless and until a material change occurs, Plaintiffs' claims are not yet ripe.

Apart from that order, the Commission has never approved a deactivation plan based on the most recent ERIC data, whether immediately, within 12 to 24 months, or otherwise. (DPFOF 3, 5–6.) Moreover, the Commission on December 2, 2019, voted to pursue legislation with more specificity about how to handle ERIC data. (DPFOF 9.)

This means neither of Plaintiffs' due process claims is presently ripe. Their procedural due process claim turns on an "an adequate opportunity to be heard prior to the deactivation of their registration" (Dkt. 1:25–26 ¶ 73.) But no deactivations would mean no notice is needed. The same is true for their second due process claim, which alleges that "[a]bsent a new letter that provides adequate notice, these voters who are on the immediate purge list will detrimentally rely on the Commission's representation that they need not re-register at the polls." (Dkt. 12:29.) Again, no deactivations would mean no notice and no due process claim. Both claims properly could be dismissed without prejudice unless and until a claim actually ripens. As the Commission argues in the *Zignego* state court appeal, there are very good state-law-based reasons those claims will not ripen—most prominently, the state statute at

issue, Wis. Stat. § 6.50(3), neither applies to the Commission nor does it require deactivations based on ERIC data, alone.

Second, even if deactivations might occur, it is not yet clear what notice would accompany them. When considering a due process claim like Plaintiffs', the ripeness requirement is especially important if it remains unclear what process will accompany the alleged deprivation at issue. For instance, in *Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998), taxi drivers challenged new licensing requirements on due process grounds. But because the challenged regulations did not require any specific proceedings before licenses would be denied, the court could not guess what proceedings the government would use before denying licenses. *Id.* at 34–36. That uncertainty meant a pre-enforcement due process challenge was not ripe. *Id.; see also Phila. Fed'n of Teachers, Am. Fed'n of Teachers, Local 3 v. Ridge*, 150 F.3d 319, 324 (3d Cir. 1998) (procedural due process claim not ripe due to "a great deal of uncertainty regarding how the statute will operate against [the] plaintiffs"); *Cronin v. FAA*, 73 F.3d 1126, 1131–32 (D.C. Cir. 1996) (same, where it was "uncertain whether any employees will in fact be subjected to the permanent employment bar without the benefit of procedural due process").

11

Both of Plaintiffs' claims that voter registration deactivations without notice will violate due process[4] are not ripe for this very reason. Like in *Thomas*, Plaintiffs here challenge potential deactivations but point to no definite plan for procedures to accompany that action that can be analyzed now. In *Thomas*, the government had not yet identified what procedures would accompany taxi license denials; here, the Commission has said nothing about what notice will accompany deactivations, if any. In both cases, therefore, a due process claim is premature and unripe without more clarity on the procedures that would accompany the challenged action. Put simply, it is too soon to claim that the Commission will not provide adequate notice of deactivations, if they ultimately occur.

The bottom line is that uncertainty exists and this Court properly could dismiss Plaintiffs' claims as unripe. If, hypothetically, the *Zignego* litigation is resolved in favor of the state-court Plaintiffs or other events change the landscape, this Court could then evaluate the adequacy of any deactivation notice or lack thereof. But until then, Plaintiffs' claims rest on shifting sands.

---

[4] Although Plaintiffs' second claim is styled as a "detrimental reliance" rather than a "procedural" due process claim, it also rests on the lack of pre-deactivation notice. (*See* Pls.' Br. 29 ("Absent a new letter that provides adequate notice, these voters who are on the immediate purge list will detrimentally rely on the Commission's representation that they need not re-register at the polls.").)

## II.   In the alternative, this case should be stayed until ongoing state litigation is resolved.

Setting aside ripeness, this case clearly should be stayed due to the unresolved *Zignego* state court litigation. If that litigation ends with an appellate decision that Wis. Stat. § 6.50(3) does not obligate the Commission to deactivate voter registrations based on ERIC data alone, that would obviate the need for this Court to consider Plaintiffs' due process claims. A temporary stay under the *Pullman* abstention doctrine and general equitable principles would be appropriate until the state litigation resolves these issues.

### A.   A *Pullman* stay should be granted until state courts resolve the Commission's obligations under Wis. Stat. § 6.50(3).

Plaintiffs' federal due process claims are premature under the abstention doctrine originating in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), which provides that "abstention generally is appropriate when determination of an unsettled question of state law by a state court could avoid the need for decision of a substantial question of federal constitutional law." *City of Houston v. Hill*, 482 U.S. 451, 476 (1987) (Powell, J., concurring). A court should abstain under *Pullman* "when (1) there is a substantial uncertainty as to the meaning of the state law and (2) there exists a reasonable probability that the state court's clarification of state law might obviate the need for a federal constitutional ruling." *Wis. Right to Life State Political*

13

*Action Comm. v. Barland*, 664 F.3d 139, 150 (7th Cir. 2011) (citation omitted). This abstention doctrine rests on "considerations of comity and federalism and applies when 'the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law.'" *Id.* (citation omitted).

In *Pullman*, which tracks this case in key respects, a Texas state agency issued a regulation regarding the staffing required on railroad cars, which the plaintiffs challenged on various federal constitutional grounds. 312 U.S. at 497–98. The plaintiffs also tacked on a state law claim that the agency lacked authority to issue the regulation. *Id.* at 448–50. Of course, if the agency lacked such authority under state law, the federal courts would not need to address any thorny federal constitutional issues. *Id.* at 501. Therefore, because a state court could resolve the dispute by deciding the unsettled state law issue, the Supreme Court held that the "district court should [have] exercise[d] its wise discretion by staying its hands." *Id.*

Here, too, Wisconsin state courts may resolve an open state elections law question in a way that would obviate the need to decide Plaintiffs' federal due process claim. Again, this case has arisen primarily because of the *Zignego* mandamus order directing the Commission to "comply with the provisions of [Wis. Stat.] § 6.50(3) and deactivate the registrations of those electors who have failed to apply for continuation of their registration within 30 days of the date

14

the notice was mailed under that provision." (PPFOF 26.) The registered voters affected by this state court order are the ones who Plaintiffs allege will lose their federal due process rights by being removed from voter rolls without proper notice. (Dkt. 1:4–5 ¶¶ 7–8.)

The Commission is appealing the *Zignego* decision on two statutory grounds.

First, under Wis. Stat. § 6.50(3), deactivation is triggered only by "reliable information" that a voter changed residence to a location outside the municipality in which they registered. Here, the state circuit court did not apply that standard when ordering the mass deactivation of hundreds of thousands of voters based on just one information source, ERIC data. The last time the Commission used ERIC data, it learned that a meaningful portion of voters included in the data had not in fact moved away from their registration address. (DPFOF 11.) It would therefore be improper to deactivate over 200,000 voter registrations *en masse* based only on this ERIC data.

Second, Wis. Stat. § 6.50(3) does not on its face obligate the Commission to deactivate any voter registrations because the statute's plain text applies only to local election officials, not the Commission: It reads that if "the municipal clerk or board of election commissioners" receives "reliable information" that a voter has moved outside the municipality, it must mail notice to the voter of that information; if the voter does not respond, "the clerk

or board of election commissioners shall change the elector's registration from eligible to ineligible status." That statute does not obligate the Commission to deactivate registrations because it is neither the "clerk" nor the "board of election commissioners," the only two officials empowered to deactivate under Wis. Stat. § 6.50(3).

This live state court dispute over Wis. Stat. § 6.50(3) clearly satisfies *Pullman*'s first requirement that "there is a substantial uncertainty as to the meaning of the state law." *Wis. Right to Life*, 664 F.3d at 150.

The second *Pullman* factor—"a reasonable probability that the state court's clarification of state law might obviate the need for a federal constitutional ruling," *id.* at 150—also is met here. If, for example, Wisconsin appellate courts decide either that Wis. Stat. § 6.50(3) does not apply to the Commission or that the ERIC data is not sufficiently reliable, no voters will face imminent deactivation and thus no federal due process claim could arise. Put differently, the only reason Plaintiffs purportedly face imminent, irreparable harm is because the state trial court in *Zignego* ordered the Commission to deactivate voter registrations on the basis of state law—and Plaintiffs recognize as much in their brief. (*See* Pls.' Br. 31 ("[I]f the *Zignego* . . . mandamus order stands, then Defendants will have changed the rules and procedures regarding voter registration in Wisconsin elections. . . . [This] constitutes an unconstitutional about-face in the state's election rules and

procedures, in violation of the Due Process Clause."); 35 ("[I]f the purge is carried out pursuant to a state court order that is not stayed and the requirements of which are not preliminarily enjoined by this Court, then the balance of this action . . . will necessarily change.").) Simply put, if *Zignego* is reversed on appeal, Plaintiffs will not face deactivation and thus will have no due process claim.

Although Plaintiffs contend that their due process claims are independent of the *Zignego* state litigation, that is simply incorrect. *Zignego* will not just resolve the "timeline set by state statutes or state court decisions for removal of ERIC-identified voters from the rolls" (Pls.' Br. 4), it will resolve whether the Commission is obligated at all under Wis. Stat. § 6.50(3) to take such action or whether the statute can require wholesale deactivation of hundreds of thousands of voters based solely on the ERIC data in question. A negative answer to either question would undercut Plaintiffs' due process claim, meaning *Pullman* squarely applies here.

It is not unusual for federal courts to abstain in cases that can be resolved on state elections law grounds, even if relevant elections are drawing near. For instance, in *Fuente v. Cortes*, 207 F. Supp. 3d 441, 444 (M.D. Pa. 2016), the plaintiff sought an injunction directing state elections officials to place him on Pennsylvania's 2016 presidential primary ballot, based on both the federal constitution and state elections law. The court decided to abstain

under *Pullman* because resolving the state law issue could obviate the federal constitutional issue and "[a]n erroneous decision so temporally close to the election could seriously disrupt Pennsylvania's election process." *Id.* at 450.[5] This case is not meaningfully different. This Court should allow state courts to determine the scope of state elections law before wading into Plaintiffs' federal due process claims.

### B. Equitable principles of comity and federalism also counsel against premature intervention in state elections procedure.

For reasons similar to those discussed above under *Pullman*, principles of comity and federalism also weigh against the Court involving itself now in this ongoing state elections dispute.

These principles underlie the Anti-Injunction Act, 28 U.S.C. § 2283, and counsel in favor of abstention, even though the Act does not absolutely bar Plaintiffs' claims. "The Act's core message is one of respect for state courts," and it "broadly commands that [state] tribunals 'shall remain free from interference by federal courts.'" *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011)

---

[5] *See also Moore v. Hosemann,* 591 F.3d 741, 746 (5th Cir. 2009) (abstention appropriate where constitutional challenge to election official's imposition of deadline for turning in ballot qualifying papers could be resolved on state law grounds); *Burdick v. Takushi*, 846 F.2d 587, 589 (9th Cir. 1988) (same result, in constitutional challenge to election official's decision not to allow write-in votes); *Bd. of Cty. Comm'rs of Douglas Cty. v. Hayden*, 715 F. Supp. 313, 316 (D. Kan. 1989) (same result, in constitutional challenge to census procedure that underlay voting district reapportionment).

(citation omitted). Under the Act, a federal court "may not grant an injunction to stay proceedings in a State court," but there a few limited exceptions, including for a section 1983 action like this one. 28 U.S.C. § 2283; *see Mitchum v. Foster*, 407 U.S. 225, 242 (1972) (explaining that claims that arise under 42 U.S.C. § 1983 fall within the "expressly authorized by Act of Congress" exception to the Anti-Injunction Act).

That does not end the analysis, however, because federal courts "may use § 1983 to support an anti-suit injunction, notwithstanding § 2283, only when justified in light of 'the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding.'" *O'Keefe v. Chisholm*, 769 F.3d 936, 940 (7th Cir. 2014) (citation omitted); *see also Mitchum*, 407 U.S. at 243 (finding exception to Anti-Injunction Act applies does not "qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding"); *Owens-Corning Fiberglas Corp. v. Moran*, 959 F.2d 634, 635 (7th Cir. 1992) ("Although § 1983 creates an exception to the full force of § 2283, a federal court must consider principles of federalism and comity before issuing an injunction." (citation omitted)).

Federal court intervention into Wisconsin's electoral process would be inappropriate at this juncture, given the ongoing uncertainty about how state courts will resolve the state-law statutory issue and, if necessary, the notice

issue. The Supreme Court has warned that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls" and that "[a]s an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam).

The interaction between the Commission's uncertain state law deactivation obligations and any hypothetical notice ordered by this Court could create significant voter confusion, just as *Purcell* warns against. Imagine one plausible scenario: (1) while the *Zignego* case proceeds, this Court grants a preliminary injunction requiring the Commission to notify voters on the ERIC list that they face deactivation unless they reaffirm their address or re-register at a new one; (2) the Commission issues that notice; and then (3) a state appellate court reverses the *Zignego* order. Voters would think that they have an obligation to update their registration or else face imminent deactivation (due to the notice ordered by this Court), but the Commission would have no impending deactivation obligation (due to the state appellate decision).

State elections administration would be best served by letting the state court litigation play out. If *Zignego* ends with a directive to the Commission to deactivate voters without notice that Plaintiffs believe is required, Plaintiffs

could then seek relief from this Court without risking voter confusion created by competing state and federal court orders.

*       *       *

In sum, because pending state court litigation may obviate Plaintiffs' claims on state law grounds and immediate federal court intervention could create confusion, this Court should abstain from considering Plaintiffs' due process claims.

## III.  If this Court were to reach it, Plaintiffs' preliminary injunction motion should be denied for similar reasons.

If the Court were to reach Plaintiffs' motion for a preliminary injunction, it should be denied. Given the uncertainty described above, they have not shown that they face likely irreparable harm absent a preliminary injunction. Again, state appellate courts should agree that no voter registrations should be deactivated now. Thus, Plaintiffs can only guess that their alleged harm is "likely" and their motion should be denied.

### A.  Preliminary injunction legal standard.

A preliminary injunction is an extraordinary and drastic remedy and is never awarded as a matter of right. *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008); *Boucher v. Sch. Bd. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998). "[A]n injunction requiring an affirmative act by the defendant" must be "cautiously viewed" and granted only "sparingly." *Graham v. Med. Mut. of*

*Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) (citation omitted). "Preliminary relief is properly sought only to avert irreparable harm to the moving party." *Chi. United Indus., Ltd. v. City of Chicago,* 445 F.3d 940, 944 (7th Cir. 2006). A preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

A "moving party must show that it has '(1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits.'" *Wis. Right To Life,* 751 F.3d at 830 (citation omitted); *Winter*, 555 U.S. at 20.

### B. Due to the present uncertainty, a preliminary injunction would be inappropriate because Plaintiffs cannot show that they likely will suffer irreparable harm.

A plaintiff seeking preliminary relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* Without demonstrating likely irreparable harm, the Court need not decide any other question. *See Abbott Labs v. Mead Johnson & Co.,* 971 F.2d 6, 19 &

n.6 (7th Cir. 1992) (plaintiff's failure to demonstrate irreparable harm "dooms a plaintiff's case and renders moot any further inquiry").

Plaintiffs cannot show that any irreparable harm is likely absent a preliminary injunction for largely the same reasons that their claims are not ripe. (*See supra* Argument I.) Plaintiffs face "likely" irreparable harm, assuming the validity of their due process theory, only if the Commission will likely deactivate voter registrations without notice. But too much uncertainty exists to foresee with any clarity that this will happen. Again, the Commission has never adopted a motion to deactivate voter registrations (DPFOF 3, 6, 10) and there are too many contingencies otherwise in play in *Zignego*, especially because the mandamus order should be reversed on appeal. Because "a plaintiff cannot obtain a preliminary injunction by speculating about hypothetical future injuries," *E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 705–06 (7th Cir. 2005), Plaintiffs' preliminary injunction motion should be denied.

## CONCLUSION

This case should be dismissed without prejudice as unripe or stayed until the *Zignego* state court litigation ends. If this Court, however, decides that the case should proceed, Plaintiffs' motion for a preliminary injunction should be denied.

Dated this 10th day of January, 2020.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/ Colin T. Roth
COLIN T. ROTH
Assistant Attorney General
State Bar #1103985

STEVEN C. KILPATRICK
Assistant Attorney General
State Bar #1025452

KARLA Z. KECKHAVER
Assistant Attorney General
State Bar #1028242

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-6219 (CTR)
(608) 266-1792 (SCK)
(608) 264-6365 (KZK)
(608) 267-2223 (Fax)
rothct@doj.state.wi.us
kilpatricksc@doj.state.wi.us
keckhaverkz@doj.state.wi.us