IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF WISCONSIN, PATRICIA ANN VILLARREAL, SASHA ALBRECHT, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 19-cv-1029-jdp |
| | ) | |
| DEAN KNUDSON, JULIE M. GLANCEY, ROBERT F. SPINDELL, JR., MARK L. THOMSEN, ANN S. JACOBS, MARGE BOSTELMANN, in their official capacity as members of the Wisconsin Elections Commission, MEAGAN WOLFE, in her official capacity as the Administrator of the Wisconsin Elections Commission, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

---

**PLAINTIFFS' BRIEF IN OPPOSITION TO THE *ZIGNEGO* PLAINTIFFS' AND THE WISCONSIN LEGISLATURE'S MOTIONS TO INTERVENE**

---

## INTRODUCTION

Three individual voters, who are currently plaintiffs in a related state court action (hereinafter, "the *Zignego* plaintiffs")[1] and the Wisconsin Legislature seek to intervene in this case, both contending that this federal action will impact the enforcement of state law and a state court-issued writ of mandamus. Respectfully, this Court should deny both motions to intervene.

---

[1] *See Zignego v. Wisconsin Elections Commission*, Case No. 2019CV000449 (Ozaukee County Circuit Court, Branch 1), *on appeal*, Case No. 2019XX2120 (Wisconsin Court of Appeals, District IV), *petition to bypass pending*, Case No. 2019AP2397.

The *Zignego* plaintiffs and the Legislature have no interest in the outcome of this lawsuit sufficient to justify their intervention under Federal Rule of Civil Procedure 24, because it does not involve the construction or validity of any Wisconsin law and does not seek to block the enforcement of state law or any state court order.  Plaintiffs have taken pains to disclaim any interest in attacking any Wisconsin state law, emphasizing that the outcome of this due process challenge will not implicate the construction or validity of any state statute or interfere with any state court proceedings or orders.  *See* dkt. 1 at 29; dkt. 12 at 3–4.[2]  A ***federal*** case and an injunction based on ***federal*** law are not converted into an adjudication of or order as to ***state*** law simply because the federal case and injunction have some impact on the enforcement of state law, such as a delay in enforcement.  The construction or legal validity of a Wisconsin statute is not at issue in this case, as Plaintiffs' two federal due process claims do not turn on the interpretation of any state law or the adjudication of any state-law issue.  Federal courts are forbidden from interpreting state laws or issuing relief "instruct[ing] state officials on how to conform their conduct to ***state*** law." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984) (emphasis added). Additionally, last year the Legislature enacted a law defining its own interests for purposes of intervention as limited to "[w]hen a party to an action challenges in state or federal court *the constitutionality of a statute, facially or as applied*, challenges a statute as violating or preempted by federal law, or *otherwise challenges the construction or validity of a statute* . . ."  Wis. Stat. § 803.09(2m) (emphasis added).  Tellingly, even when the Legislature gave itself the power to intervene, it only claimed an interest in intervening in cases involving the ***construction*** or ***legal validity*** of Wisconsin statutes.  This is not such a case.

---

[2] All citations are to the CM/ECF pagination at the top of the electronically filed document.

In this action, Plaintiffs only request that voters receive adequate notice that complies with federal constitutional requirements in advance of any deactivation.  *See* dkt. 1 at 28–30.  The Complaint alleges that Defendants violated their due process rights by sending a letter in October 2019 ("the 2019 ERIC letter" or "the letter") that failed to provide registered Wisconsin voters with the constitutionally-required, pre-deprivation notice of their deactivation and the timeline for this deactivation.  By contrast, the state court litigation involves the interpretation and application of Wis. Stat. § 6.50(3), specifically whether information obtained from the Electronic Registration Information Center ("ERIC") is "reliable information" of a true residential address change that triggers the deactivation of voter registration within thirty days of a notice's mailing pursuant to Wis. Stat. § 6.50(3).

The proposed intervenors both allege that Plaintiffs seek to interfere with ongoing state court proceedings concerning the interpretation of Wis. Stat. § 6.50(3), but this is not so.  As Plaintiffs stated in their brief in support of their preliminary injunction motion, *see* dkt. 12 at 3–4, their federal due process claims will be pressed regardless of the outcome in *Zignego* and regardless of the timeline for deactivation under Wisconsin state law—whether it is the thirty-day rule in Section 6.50(3) when there is "reliable information" of a voter's move to a new municipality or another state, or the 12-to-24-month deactivation policy Defendants adopted in June 2019.[3]

---

[3] In their Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction and in Support of Defendants' Motion to Dismiss or, Alternatively, for a *Pullman* Stay, Defendants represent that "[a]part from [the *Zignego* writ of mandamus] order, the Commission as of the date of this filing has adopted no plan to deactivate any voter registrations.  While this appears to contradict the record, *see* dkt. 11-2 at 4–6 (outlining new policy, including 12-to-24-month deactivation timeline); dkt. 11-4 at 6 (noting unanimous adoption of motion to "[a]uthorize staff to flag files of voters rather than deactivating voters who do not respond to a Movers mailing after 30 days"), Plaintiffs would of course welcome Defendants stipulating that no such 12-to-24-month deactivation policy was ever adopted or formally rescinding the policy and filing evidence of that rescission with this Court.  Of course, if the writ of mandamus issued in *Zignego* is upheld through

This is because Plaintiffs' claims are directed at the failure to provide any notice to voters that they were facing deactivation or any notice of when this deactivation would occur if the voters took no action in response to the 2019 ERIC letter.  Whatever state law (as interpreted by Wisconsin state courts) commands for voter list maintenance is irrelevant, as that removal process may go forward according to the procedures set forth in state law, but only *after* the Commission issues a new notice to the recipients of the 2019 ERIC Letter that satisfies federal due process requirements. *See* dkt. 1 ¶ 14.[4]  Plaintiffs have not challenged any Wisconsin laws, rules, or policies on their face or as applied, but rather have challenged the specific *federal* constitutional deficiencies and effective misrepresentations in the October 2019 letter Defendants sent to the 232,579 Wisconsin voters flagged by ERIC.  The writ of mandamus issued in *Zignego* has increased the exigency of this situation by requiring deactivation thirty days after a notice's mailing, but Plaintiffs' federal constitutional challenge is different in its nature and its legal basis and seeks to enjoin any deactivation on any timeline on the basis of the 2019 ERIC letters, *even if* the state courts' resolution of the pending litigation in that forum is that the 12-to-24-month timeline governs.[5]  Accordingly, the requested injunction in this case would not enjoin or otherwise interfere with a

---

all appeals and a 30-day deactivation timeline applies under Wisconsin Statutes Section 6.50(3), then this would be a moot point.

[4] Other legal violations may be asserted in other cases, but as to the due process claims, this would cure the claimed violations here and allow the deactivations to proceed.

[5] If the writ of mandamus were vacated and voters were not subject to imminent removal from the voter rolls, that would of course obviate the need for a preliminary injunction or other emergency relief, but Plaintiffs would still pursue their constitutional claims and the permanent injunction as set forth in the Prayer for Relief.  *See* dkt. 1 at 28–30.  However, as of this filing, a writ of mandamus requiring immediate deactivation has been issued by the Ozaukee County Circuit Court, *see* dkt. 11-8; no court in Wisconsin has issued a stay of that writ of mandamus; and the *Zignego* plaintiffs have moved to hold Defendants in contempt for failing to immediately deactivate the 232,579 voters on the 2019 ERIC list, minus those who have already updated or confirmed their registration addresses.  A hearing on the *Zignego* plaintiffs' motion for contempt is currently scheduled for January 13, 2020.  Dkt. 47-4 at 2.

state court proceeding or order and, therefore, the *Zignego* plaintiffs and the Legislature have no

stake in the outcome of this litigation that is recognized by Rule 24.[6]

      Suggesting that the Plaintiffs' due process rights under the U.S. Constitution, and any order

by this Court to protect them, must yield to state law and state court orders would stand the

Supremacy Clause on its head.  Defendants must enforce state law requirements on voter list

maintenance, as construed by Wisconsin state courts.  But they must, of course, also comply with

federal constitutional requirements, including due process.  There is no conflict between these two

separate legal requirements, but to the extent that any injunction issued by this Court based on the

U.S. Constitution may require a delay in compliance with the state court's writ of mandamus, that

is what the Supremacy Clause mandates.

      Implicitly recognizing that no state law is challenged here and that there would be no

substantive conflict between a federal injunction in this case and the state court's writ of

mandamus, if it is affirmed, the Legislature announces that it seeks to intervene to "defend the

constitutionality of the full enforcement of Subsection 6.50(3)."  *See* dkt. 36 at 13.  Because Section

6.50(3) is not challenged here on its face or as applied, this tortured phrase could only be referring

to the ***timing*** of Defendants' compliance with the writ of mandamus, if upheld.  In their Motion to

Intervene, the *Zignego* plaintiffs communicate more forthrightly that their real concern is the

timing of deactivation, not any substantive "conflict" or "contradict[ion]" between the cases (as

the Legislature contends, *see* dkt. 38 at 17): "[T]he relief requested by Plaintiffs may result in

undermining the Writ by allowing Defendants to continue to delay deactivation."  *See* dkt. 22 at

13; *see also id*. at 15 ("[S]uch a legal finding by this Court would torpedo the interest of the

---

[6] If the Legislature wants to argue for a particular construction of a Wisconsin statute or defend the validity of said statute, then it should seek to participate in the *Zignego* litigation in state court.

*Zignego* Plaintiffs in *immediate* deactivation of such voters – or at least deactivation *before the next elections* – as compelled by the Writ.") (emphasis added).  But it is the *Zignego* plaintiffs' five-month delay in filing their state court action that has caused these disputes to arise so soon before the next elections in Wisconsin.  Their action could have been filed in June 2019, when Defendants adopted the policy the *Zignego* plaintiffs have challenged in state court.  The *Zignego* plaintiffs have already conceded that there is a notice problem in this case; they simply disagree as to when that notice should be given and push for post-deprivation notice.  *See* dkt. 22 at 3, 9–10; dkt. 25 at 9–10, 16–21.  Had the *Zignego* plaintiffs' state court case been filed in June and succeeded, there would have been no question that new, adequate notice must be provided ***pre-deprivation***, in keeping with federal due process requirements.[7]  Instead, the *Zignego* plaintiffs are arguing that these registered voters must be immediately purged because there are impending elections in Wisconsin, and that the notice must be provided post-removal, not pre-removal.  But that argument is contrary to federal court precedent on due process, and the fast-approaching elections are all the more reason why over 200,000 voters cannot be immediately purged without adequate pre-deprivation notice.

Aside from the proposed intervenors' lack of interest in the outcome of this case, the Wisconsin Department of Justice ("DOJ") adequately represents the proposed intervenors.  Earlier today, DOJ filed a motion to dismiss or, in the alternative, to stay this case on *Pullman* abstention grounds, and filed a brief in opposition to Plaintiffs' motion for a preliminary injunction.  *See* dkt. 42 at 2–4.  Both the *Zignego* plaintiffs and the Legislature have moved for dismissal or a stay of

---

[7] Even Wis. Stat. § 6.50(3) itself requires *pre-deprivation* notice: "If the elector no longer resides in the municipality or fails to apply for continuation of registration *within 30 days of the date the notice is mailed*, the clerk or board of election commissioners shall change the elector's registration from eligible to ineligible status."  (Emphasis added.)

6

this action based on *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941), *see* dkt. 25 at 8–11; dkt. 38 at 25–27, and both have opposed the entry of a preliminary injunction, *see* dkt. 25 at 11–21; dkt. 38 at 47–54.  Any disagreements the proposed intervenor may have with DOJ's litigation strategy do not render its representation of their interests inadequate.

As to permissive intervention, granting intervention to the *Zignego* plaintiffs and the Legislature would inject additional parties and issues into this action that are irrelevant to the resolution of this straightforward case and would needlessly complicate this litigation and burden the existing parties and the Court.  Plaintiffs therefore respectfully urge the Court to deny the *Zignego* plaintiffs' and the Legislature's Motions to Intervene, both as to intervention of right and permissive intervention.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the Wisconsin Elections Commission's ("the Commission") 2019 voter list maintenance process.  As set forth at length in Plaintiffs' Complaint and Brief in Support of their Motion for Preliminary Injunction, Wisconsin joined ERIC in 2015.  As part of its membership, in 2017 and 2019, Wisconsin received from ERIC a list of voters believed to have moved within the state ("the ERIC list").  *See* dkt. 12 ¶¶ 11–20.  This action arises out of the Commission's use of the 2019 ERIC list.

In early 2019, Defendants acknowledged serious problems with data inaccuracy during the Commission's use of the 2017-2018 ERIC list.  *See* dkt. 11-1 at 3–7.  At least 7.78 percent of voters flagged on the ERIC list were included in error, and the Commission ultimately reactivated tens of thousands of voters' registrations.  *See* dkt. 12 ¶ 16.  In light of these issues, in June 2019, the Commission decided to send a letter to each voter on the 2019 ERIC list and give them at least twelve months to respond before deactivating their registrations.  *See* dkt. 11-2 at 4-6; dkt. 11-4 at

6.  The Commission sent the letter to 232,579 registered Wisconsin voters in October 2019.  *See* dkt. 11-16 at 2.[8]  Defendants' 2019 ERIC letter told voters that they could update their addresses online or at the polls on Election Day or by submitting a paper registration form to their municipal clerk.  *See* dkt. 11-4 at 9.  If they had not moved, they could confirm their addresses online or at the polls in "the next election," or by returning the detachable postcard at the bottom of the letter. *Id*.  Critically for the purposes of Plaintiffs' claims here, the letter did not warn voters that failure to respond or otherwise take one of the listed actions would result in cancellation of their registration; nor did it set a deadline for taking action in response to the letter.  *See id*.  As of December 20, 2019, 2,412 of the 232,579 voters sent the 2019 ERIC letter had confirmed their addresses, meaning that they had been erroneously identified as movers on the ERIC list.  *See* dkt. 11-16 at 2.

In November 2019, the *Zignego* plaintiffs sued the Commission and five of its six individual members in Ozaukee County Circuit Court, asking the state court to construe the meaning of Wisconsin Statute Section 6.50(3), and arguing that this specific and narrow statutory provision required the Commission to remove ERIC list voters who did not respond to or otherwise take action on the 2019 ERIC letter within thirty days of its mailing. Dkt. 12 ¶ 25; dkt. 11-6. Plaintiff League of Women Voters of Wisconsin ("League" or "LWVWI") moved to intervene in that case, arguing in part that the relief sought by the *Zignego* plaintiffs would deprive the voters who did not respond to the 2019 ERIC letter of their constitutional due process rights.  Dkt. 12 ¶ 34.  The *Zignego* plaintiffs, who now seek to intervene in this federal case, opposed the League's motion to intervene. *See* dkt 11-7 at 27:18–29:23. The circuit court agreed, reasoning in part that

---

[8]  Plaintiffs had previously cited a figure of 234,039 registered voters, but this page of the Commission's website clarifies that 1,460 voters were dropped from the initial 2019 ERIC list after they re-registered, and letters were ultimately sent to 232,579 voters.

the League's arguments sought to inject issues, such as ERIC-flagged Wisconsin voters' rights to adequate notice under the Due Process Clause, that it concluded were not relevant to the *Zignego* plaintiffs' claims.  Consequently, the circuit court denied the League's motion to intervene in the state court action. . Dkt. 12 ¶ 35

The circuit court furthermore agreed with the plaintiffs that the plain-text meaning of Section 6.50(3) was clear and should be construed to require the Commission to deactivate the registrations of voters who received the 2019 ERIC letter but did not respond or otherwise take action within thirty days of the letter's mailing in October.  Dkt. 11-7 at 76:12-14**.** The circuit court therefore issued a writ of mandamus ordering the Commission to "comply with the provisions of § 6.50(3) and deactivate registrations of those electors who have failed to apply for continuation of their registration within 30 days the notice was mailed under that provision."  *See* dkt. 11-8. The Commission appealed the circuit court's order to the Court of Appeals, where it is currently pending, and sought a stay of the order; the stay motion has been held in abeyance.  Dkt. 47-1 at 5.  The *Zignego* plaintiffs (respondents in the appeal), have petitioned the Wisconsin Supreme Court to accept the case on bypass pursuant to Wisconsin Statute Section 809.61.  That petition remains pending.  The League has not appealed the denial of its motion to intervene; nor has it further sought to participate in the state court action.

On December 17, 2019, Plaintiffs filed the Complaint in this action, alleging that the Defendants' 2019 ERIC letter violated the Plaintiffs' due process rights by failing to provide adequate notice of deactivation or any timeline for deactivation and inducing detrimental reliance on the letter's representation that voters could confirm their registration addresses by voting in "the next election."  Dkt. 1 at 21–28.  Plaintiffs subsequently filed a Motion for Preliminary Injunction and for Expedited Discovery to enjoin the removal of 2019 ERIC list voters until these

9

due process violations are cured.  *See* dkt. 7.  On January 2, 2020, the *Zignego* plaintiffs moved to intervene in this matter, and on January 6, 2020, the Legislature moved to intervene.  *See* dkt. 21–22, 35–36.  On January 10, 2020, Defendants' filed a motion to dismiss, or in the alternative, a *Pullman* stay, *see* dkt. 41, and they also filed their opposition to Plaintiffs' preliminary injunction motion, *see* dkt. 42.

The *Zignego* plaintiffs make three arguments claiming an interest on which they rely to support intervention.  ***First***, they argue they have an interest in protecting the writ of mandamus they obtained in circuit court, ordering the Commission to "comply with the provisions of [Wis. Stat.] § 6.50(3) and deactivate the registrations of those electors who have failed to apply for continuation of their registration within 30 days of the date the notice was mailed under that provision."  Dkt. 22 at 11–13; *see also* dkt. 11-8 at 3.  ***Second***, they argue that they are "harmed as voters if others are enabled by WEC to vote when, or at a location where, they are not legally eligible to vote."  Dkt. 22 at 13.  ***Third***, they claim that, as voters, they are the direct statutory beneficiaries of the Help America Vote Act of 2002 and Wisconsin election law.  Dkt. 22 at 14.  They argue that failure to deactivate ineligible voters under state law impairs their interests.  Along with their motion to intervene, the *Zignego* plaintiffs also filed a combined motion to dismiss, or in the alternative, to stay (dkt. 23), and a response to Plaintiffs' motion for a preliminary injunction (dkt. 26).

For its part, the Legislature claims that this action "would necessarily impair the full and complete enforcement of Subsection 6.50(3) on constitutional grounds" if the Court were to grant Plaintiffs its requested preliminary and permanent injunctions.  Dkt. 36 at 9.  The Legislature asserts that state law—specifically, Wisconsin Statutes Sections 803.09(2m) and 13.365—grants the Legislature the statutory right to represent the State's interest in ensuring that its voter rolls

10

contain only eligible voters.[9] *Id.* at 6. According to the Legislature, DOJ cannot adequately defend this interest because, in the state court proceedings, it has argued against applying Section 6.50(3) to the ERIC list. *Id.* at 7–8. As a result, the Legislature believes its goal—to provide a "vigorous defense" of Section 6.50(3), *id.* at 6—"is diametrically opposed" to DOJ's goal in this action. *Id.* The Legislature further contends that even if the Court finds that DOJ's goals do not diverge from its own, DOJ's defense of its clients in state court—also the Defendants here—rises to the level of "gross negligence or bad faith," thereby rendering DOJ's representation of the state's interests inadequate. *Id.* at 12.

## LEGAL STANDARD

### 1. Intervention of Right

Under Federal Rule of Civil Procedure Rule 24(a), a party seeking to intervene of right must prove: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019). A party's failure to prove "even one" of these factors "requires that the court deny the motion" to intervene as of right. *Planned Parenthood of Wis. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019). Those individuals or entities moving for intervention bear the burden of proving each of these elements. *One Wis. Inst., Inc. v. Nichol*, 310

---

[9] The Legislature also states that federal law requires the State to perform regular list maintenance to ensure voter rolls' accuracy. *See* dkt. 36 at 7. Although this statement is true, the federal statute cited by the Legislature also requires states to implement "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." 52 U.S.C. § 21083(a)(4)(B). Plaintiffs Patricia Ann Villarreal and Sasha Albrecht are eligible, registered Wisconsin voters.

F.R.D. 394, 397 (W.D. Wis. 2015) (citing *Ligas ex rel. Foster v. Maram,* 478 F.3d 771, 773 (7th Cir. 2007)).

**Timeliness.**  Courts consider four factors when determining whether a party's motion to intervene is timely: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances."  *State v. City of Chicago*, 912 F.3d at 984 (quoting *Grochocinski v. Mayer Brown Rowe & Mawe, LLC*, 713 F.3d 785 (7th Cir. 2013)).

**Interest.**  The asserted interest "must be direct, significant, and legally protectable."  *Lopez-Aguilar v. Marion Cty. Sheriff's Dept.*, 924 F.3d 375, 391 (7th Cir. 2019) (quoting *Solid Waste Agency of No. Cook Cty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503 (7th Cir. 1996)).  An interest is direct when "the applicant would have 'a right to maintain a claim for the relief sought.'"  *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985) (quoting *Heyman v. Exchange Nat'l Bank of Chicago*, 615 F.2d 1190 (7th Cir. 1980)).  The interest must also be "unique to the proposed intervenor."  *Wis. Educ. Assn Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013) (citing *Daley*, 764 F.2d at 1268).

"A party without standing cannot intervene as of right."  *Planned Parenthood*, 942 F.3d at 798.  In fact, a proposed intervenor must show "more than the minimum Article III interest . . ."  *Lopez-Aguilar*, 924 F.3d at 391 (quoting *Flying J, Inc. v. Van Hollen*, 578 F.3d 569 (7th Cir. 2009)); *City of Chicago v. FEMA*, 660 F.3d 980, 984 (7th Cir. 2011) ("Article III standing, however, does not suffice to establish the required Rule 24(a) 'interest,' . . .").  Otherwise, "if no more were required for intervention as a matter of right, intervention would be too easy and clutter too many lawsuits with too many parties."  *City of Chicago v. FEMA*, 660 F.3d at 985 (citing

*Flying J*, 578 F.3d at 571).  A party satisfies Article III's standing requirement when it can demonstrate that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Spokeo v. Robins*, 136 S. Ct. 1540 (2016)).

   ***Adequacy of Representation.*** Courts apply three rules in evaluating adequacy of representation:

> [1] The default rule is a liberal one: "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate." [2] Where the prospective intervenor and the named party have "the same goal," however, there is a rebuttable presumption of adequate representation that requires a showing of "some conflict" to warrant intervention. [3] This presumption of adequacy becomes even stronger when the representative party "is a governmental body charged by law with protecting the interests of the proposed intervenors"; in such a situation the representative party is presumed to be an adequate representative "unless there is a showing of gross negligence or bad faith."

*Planned Parenthood of Wis.*, 942 F.3d at 799 (internal citations omitted).  The Seventh Circuit held that the third, most stringent standard applied to the Legislature's motion to intervene in the *Planned Parenthood of Wisconsin* litigation, where the court found that the Legislature shared the same goal as the Attorney General and state law tasked the Attorney General with representing the state.  *See id.* at 801–02.  Disagreements over litigation strategy are insufficient to rebut the presumption.  *Id.* at 801.  "[A] mere disagreement over litigation strategy is not enough to show inadequacy of representation."  *Id.* at 808 (Sykes, J., concurring).  As such, the Legislature faces a "high standard" to intervene as of right.  *Id.*

### 2.  Permissive Intervention

   Rule 24 also gives federal courts the discretion to grant permissive intervention if the applicant "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Permissive intervention is unwarranted if it would cause undue delay or prejudice to the parties.  *See id.* 24(b)(3).  The Seventh Circuit recently confirmed that a

district court retains wide latitude to deny permissive intervention if it believes the costs of intervention outweigh its benefits, as well as the ability to impose "strict" limitations on a proposed intervenor's participation if it does grant intervention. *See Planned Parenthood of Wis.*, 942 F.3d at 804. "The considerations that guide the court's exercise of [its] discretion include prejudice to the original parties and the potential for slowing down the case, recognizing that "'Rule 24(b) is just about economy in litigation.'" *One Wis. Inst., Inc.*, 310 F.R.D. at 399 (citing *City of Chi. v. Fed. Emergency Mgmt. Agency,* 660 F.3d 980, 987 (7th Cir. 2011)). A district court's discretion in weighing permissive intervention is not limited only to the two mandatory factors in Rule 24(b)(3), and it is not prohibited from considering the elements of intervention of right as discretionary factors. *Planned Parenthood of Wis.*, 942 F.3d at 804.

## ARGUMENT

I. **The *Zignego* plaintiffs do not meet the requirements for intervention of right.**

    A. **This case will resolve legal issues and turn on critical facts that differ from those raised by the state court litigation.**

The *Zignego* plaintiffs seek to divert the Court's attention from the federal constitutional questions posed by Plaintiffs' claims in the instant matter, repeatedly referencing legal issues of state statutory interpretation that are hotly contested in the state court litigation but that simply are not placed at issue by Plaintiffs' claims here. Critically, for intervention purposes, the claims at issue here do not allege, pose, or implicate a challenge to Wis. Stat. § 6.50(3), the statute at issue in the *Zignego* litigation pending in the state courts; nor do they challenge or implicate the Wisconsin state courts' construction or enforcement of that statute. The law is clear that federal courts may not interpret state laws or issue relief "instruct[ing] state officials on how to conform their conduct to state law," *Pennhurst*, 465 U.S. at 106, and Plaintiffs do not seek that relief from this Court, knowing full well that this Court is not empowered to grant it.

By contrast to the *federal* constitutional claims posed by Plaintiffs in this action, the question at issue in the *Zignego* litigation is whether *state law* (specifically Section 6.50(3)) requires the deactivation of the registrations of voters who received the 2019 ERIC Letter but failed to respond within the timeframe established by Section 6.50(3), or whether the Commission may lawfully set a different timeline for deactivation.  That litigation does *not* concern the content of the 2019 ERIC letter, or whether the letter satisfies *federal* constitutional requirements.  *See, e.g.,* dkt. 11-13 at 44 ("The Petitioners do not challenge the form of the notice sent to voters. Rather, the Petitioners challenge the decision by WEC not to follow up on the notices that were actually sent as required by Wis. Stat. § 6.50(3).").  Indeed, the League sought to intervene in the state court litigation, raising (in part) the federal due process problems that would arise if voters who received the 2019 ERIC letter were removed from the rolls.  But the circuit court denied the League's motion to intervene, stating in its ruling that the League "talk[s] in terms of due process violations and constitutional issues . . . They are talking a much more complex, much more involved litigation than what I am looking at and what has been brought by the plaintiffs."  Dkt. 11-7 at 30:21–31.  The circuit court continued: "[I]f the League were this concerned about it, they should have done this on their own, in a separate lawsuit, and this is not the lawsuit to do it."  *Id.* at 35:7–9.  The circuit court further suggested that if the League "want[s] to file an action that would have the normal discovery provisions and the discovery process and motions and witness lists and things like that, that is what they should do."  *Id.* at 33:15–18.

In their proposed Motion to Dismiss, the *Zignego* plaintiffs inaccurately state that the League did not pursue its due process arguments in state court.  *See* dkt. 25 at 16.  To the contrary, as the *Zignego* plaintiffs go on to acknowledge, *id.*, Plaintiff LWVWI raised its constitutional concerns regarding the 2019 ERIC letter in its brief and during the December 13, 2019 hearing,

and formally moved to place them before the circuit court in the state court litigation but were opposed in their effort to do so *by the very same three proposed intervenors* who are plaintiffs in *Zignego*. *See* dkt. 11-7 at 30:21–31, 35:7–9; *see also* dkt. 11-11, at 18 ("The WEC's failure to adequately inform voters of the risks of failing to take action on the ERIC notice letter is a manifest due process problem, one that the WEC's counsel cannot raise and attack. That obvious conflict of interest over the clearly deficient notice also militates in favor of finding a divergence of interests between Defendants and the League."). Ultimately, the League's motion to intervene in *Zignego* was denied by the circuit court, which specifically cited the League's due process arguments in announcing its ruling and suggested it bring a separate lawsuit. *See* dkt. 11-7 at 30:4–36:12.

This case is that separate suit.[10] This action concerns **only** the constitutionality of the notice provided to voters before the Commission's deprivation of their statutory rights to registration. Plaintiffs' two federal claims do not turn on the interpretation of any state law or the adjudication of any state-law issue. Rather, Plaintiffs allege that Defendants must comply with due process requirements under the U.S. Constitution before deactivating any voter registrations, and that they did not do so in this particular instance. Plaintiffs have not challenged any state laws on their face or as applied, but rather have challenged the specific deficiencies or effective misrepresentations

---

[10] The *Zignego* plaintiffs argue that Plaintiff LWVWI should have remained in state court, appealed the denial of its motion to intervene, sought a stay of the case from the Court of Appeals, and avoided pursuing its *federal* claim in *federal* court. As of this filing, 28 days after the League's motion to intervene was denied in state court, no action has been taken by any court above the circuit court on any of the pending motions or petitions. The case has not moved, and a hearing on the *Zignego* plaintiffs' contempt motion is scheduled for Monday January 13, 2020 in Ozaukee County Circuit Court. Dkt. 47-4 at 2. Federal courts exist to adjudicate federal constitutional claims in such time-sensitive matters involving the constitutional rights of hundreds of thousands of United States citizens. This is especially so where a state court has rejected the intervention of parties seeking to raise those federal constitutional defects.

in the 2019 letter sent to voters flagged by ERIC.  Similarly, when a plaintiff challenges the discriminatory application or enforcement of a facially valid state law governing voting under the Fourteenth or Fifteenth Amendment, that suit is not a challenge to the state law but rather to its unconstitutional administration.  As to the requested injunction, Plaintiffs seek a preliminary injunction halting the deactivation of the voters on the 2019 ERIC list until after they are provided with constitutionally required notice under a permanent injunction.  *See* dkt. 12 at 28–30.  Plaintiffs most certainly do not "seek[ ] a stay of a state court order directing WEC to follow state law," as the *Zignego* plaintiffs insist in their opposition to Plaintiffs' motion for preliminary injunction  *See* dkt. 25 at 14.  Nor would the relief Plaintiffs seek from this Court stay the state court's proceedings, *id*., which can and will proceed to completion; even if the writ of mandamus is upheld, Defendants can comply with both that writ and the injunction Plaintiffs seek here.  The sole "conflict" is the **timing** of compliance with the writ of mandamus, *i.e.* the timing of deactivation and, on that sole area of tension, the federal injunction would of course supersede the state court writ of mandamus. Moreover, the writ of mandamus could go into effect as long as the constitutional deficiencies are first cured.

Most importantly, and fatal to the *Zignego* plaintiffs' motion to intervene, this action does not hinge on the outcome of the state court litigation.  As long as the removal process comports with federal due process requirements including a new, adequate notice letter, it can go forward consistent with Plaintiffs' claims and the requested injunction, independent of whether or not the state courts decide that **state law** requires the removal from the rolls of voters who received the ERIC letter but failed to respond within the timeframe established by Section 6.50(3).  *See* dkt. 1 ¶ 14; dkt. 12 at 3–4. Because the 2019 ERIC letter failed to communicate the possibility of removal from the rolls or any timeframe in which this would occur, the **federal** constitutional injury to the

Plaintiffs remains and must be resolved before these deactivations can take place, regardless of how the Wisconsin Supreme Court ultimately construes Section 6.50(3) and regardless of the governing timeline for deactivation.  Defendants' actions and inactions are "the cause of [the] plaintiffs' injury" here, *see* dkt. 25 at 13 (quoting *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019)), and not the writ of mandamus issued in *Zignego* or the thirty-day timeframe for deactivation it mandated.

The *Zignego* plaintiffs, therefore, have no interest in this case because Plaintiffs' claims here are brought, and will rise or fall on their own as a matter of federal constitutional law, regardless of the outcome of the state court litigation.  Of course, if an injunction issued by this Court were to have the effect of halting the Commission's voter purge because the 2019 ERIC letter failed to comport with federal due process, then under the U.S. Constitution's Supremacy Clause, U.S. CONST. art. VI cl. 2, Defendants must comply with the federal court order, notwithstanding any state court ruling requiring the purge to go forward.  But that is simply a matter of our constitutional structure and does not give rise to a protectible interest on the part of the *Zignego* plaintiffs in this due process litigation.

Plaintiffs' due process claims stand regardless of how the state courts eventually interpret Section 6.50(3) because the specific and narrow legal question presented there—whether the text of Section 6.50(3) required the Commission to deactivate the registrations of voters who did not respond to the 2019 ERIC letter within 30 days—is distinct from the issue here of whether the 2019 ERIC letter *itself* provided voters on the 2019 ERIC list with constitutionally adequate notice and the opportunity to protect their registrations before they were deactivated.  Thus, this action— unlike the state court action—challenges as unconstitutional an ***action*** of the Commission itself (drafting and sending the 2019 ERIC letter and ultimately relying on it to remove voters on any

applicable timeframe), not the text or meaning of a state statute.  And Defendants must comply with a federal court order if it conflicts with a state court order, for example, as to the timing of compliance.  *See Madej v. Briley*, 370 F.3d 665, 667 (7th Cir. 2004) ("Faced with conflicting orders-one issued by a federal court to implement the Constitution, and the other issued by a state court as a matter of state practice-the Attorney General of Illinois and the State's Attorney of Cook County preferred the latter over the former. This inverts the priority prescribed by the Constitution.").

The *Zignego* plaintiffs betray that their real concern is the timing of deactivation, not any substantive "conflict" or "contradict[ion]" between the cases: "[T]he relief requested by Plaintiffs may result in undermining the Writ by allowing Defendants to continue to delay deactivation." Dkt. 22 at 13; *see also id.* at 15 ("[S]uch a legal finding by this Court would torpedo the interest of the *Zignego* Plaintiffs in *immediate* deactivation of such voters – or at least deactivation *before the next elections* – as compelled by the Writ.") (emphasis added).  But it is the *Zignego* plaintiffs' five-month delay in filing their state court action that has caused these disputes to arise so soon before the next elections in Wisconsin.  Their action could have been filed after the Commission's June 11, 2019 meeting, when Defendants adopted the policy the *Zignego* plaintiffs have challenged in state court—the 12-to-24-month deactivation timeline.  *See* dkt. 11-2 at 4–6 (outlining new policy); dkt. 11-4 at 6 (noting unanimous adoption of motion to "[a]uthorize staff to flag files of voters rather than deactivating voters who do not respond to a Movers mailing after 30 days").  The Zignego plaintiffs' claims were ripe in June, and they need not have delayed until after the 2019 ERIC letters were mailed out.

Furthermore, the *Zignego* plaintiffs have already conceded that there is a notice problem in this case; they simply disagree on when that notice should be given and argue for post-

deprivation notice. *See* dkt. 22 at 3; *id.* at 9 ("And the *Zignego* Plaintiffs, throughout the state court litigation, have *suggested* that WEC can and *should* send a new notice to the address of any registrations that WEC deactivates.") (first emphasis in original; second emphasis added). Had the *Zignego* plaintiffs filed their state court case in June and prevailed, it appears that there would have been no dispute that new, adequate notice should be provided pre-deprivation, in keeping with federal due process requirements, as well as Wisconsin Statute Section 6.50(3). Instead, the *Zignego* plaintiffs are arguing that notice can and should be provided but *must* be given *after* deactivation is completed, and that these registered voters *must* be immediately purged because there are impending elections in Wisconsin. *See* dkt. 22 at 9–10.

Finally, the *Zignego* plaintiffs incorrectly state that Plaintiffs here are "currently pursuing reversal of the Writ in the Wisconsin appellate courts." Dkt. 22 at 13. That representation is inaccurate: the League has filed no appeal of the denial of its motion to intervene and has not sought to further participate in the state court litigation. Plaintiffs Villarreal and Albrecht have had no involvement in the state court litigation.

### B. The *Zignego* plaintiffs have no standing to raise claims or defenses here, let alone any interest in this litigation.

The *Zignego* plaintiffs cannot show a direct interest in this case because they cannot show standing, much less "more than the minimum Article III interest." *Lopez-Aguilar*, 924 F.3d at 391. To satisfy Article III standing, an injury must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)). It is not adequate for a party to raise a general interest in the enforcement of laws. *See Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) ("We have repeatedly held that such a 'generalized grievance,' no matter how sincere, is insufficient to confer standing. A litigant 'raising only a generally available grievance about government—claiming

only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.'" (quoting *Defenders of Wildlife*, 504 U.S. at 573–74); *Laskowski v. Spellings*, 546 F.3d 822, 825 (7th Cir. 2008) (". . . a plaintiff's payment of taxes is generally insufficient to establish standing to challenge the constitutionality of a government program or activity.").

To support their assertions that they have an interest in this matter warranting intervention, the *Zignego* plaintiffs first argue they have an interest in protecting the writ of mandamus they obtained in the state circuit court, ordering the Commission to "comply with the provisions of [Wis. Stat.] § 6.50(3) and deactivate the registrations of those electors who have failed to apply for continuation of their registration within 30 days of the date the notice was mailed under that provision." *See* dkt. 22 at 11–13; dkt. 11-8 at 3.  As discussed above, their desire to see Section 6.50(3) interpreted to require the *immediate* removal of voters does not give rise to an interest in this case seeking to redress the Commission's violation of Plaintiffs' federal due process rights. In addition, in their state court suit, the *Zignego* plaintiffs sued the Commission under Wis. Stat. § 5.06, a statute that effectively permits any elector to sue for the enforcement of state election laws, based only on a general interest in good governance.  The *Zignego* plaintiffs admitted as much in their state court complaint, claiming injuries only as taxpayers and as voters.  *See* dkt. 11-6 ¶ 8. Given that their standing in the state court litigation was based only on a generalized grievance that would not confer standing in federal court, the *Zignego* plaintiffs cannot bootstrap this basis for standing in state court into a basis for Article III standing in federal court.

Next, they argue that they are "harmed as voters if others are enabled by WEC to vote when, or at a location where, they are not legally eligible to vote."  Dkt 22 at 13.  This argument

fails because it is not unique to the *Zignego* plaintiffs; this asserted harm is shared with all voters in Wisconsin.  This Court has previously denied intervention to a group of legislators, voters, and clerks in a challenge to a voter ID law where, as here, the interest asserted by the voters who attempted to intervene was no different than that of any other voter:

> [A]nyone . . . who votes in an election, has an interest in making sure that the result of the election is legitimate.  Thus, neither the interest in being elected through fraud-free elections, nor the interest in casting a vote that will not be cancelled by a fraudulent ballot, is unique . . . to the voters.

*One Wis. Inst., Inc.*, 310 F.R.D. at 397; *see also Arcia v. Detzner*, No. 12-22282-CIV, 2012 WL 12844562, at *2 (S.D. Fla. Sept. 28, 2012) (denying intervention in case challenging voter purge under federal statute where prospective intervenors stated they were concerned with possibility of voter dilution and finding that "this asserted interest is no different from that of any other Floridian who is duly registered to vote"); *League of Women Voters of Fla. v. Detzner*, 283 F.R.D. 687, 688 (N.D. Fla. 2012) (among other reasons for denying intervention in federal challenge to voter purge, concluding that four voters claiming vote dilution "ha[d] only the same interest in the issues as any other registered voter").

The *Zignego* plaintiffs' final argument to support their interest in the litigation is their assertion that as voters they are the direct statutory beneficiaries of the Help America Vote Act of 2002 ("HAVA") and Wisconsin election law.  Dkt. 22 at 14.  This argument also fails for two reasons.  First, Plaintiffs' complaint does not rely on HAVA nor Wisconsin election law, and neither HAVA nor Wisconsin election law may serve as a defense to constitutional due process claims under the Fourteenth Amendment.  Second, like their assertion that they are harmed by voters casting ballots when and where they are ineligible to vote, this argument by the *Zignego* plaintiffs could be made by any voter in Wisconsin.

22

**C. The *Zignego* plaintiffs have not demonstrated that any identified interest would be impaired if this Motion were denied, given that this case seeks to vindicate voters' due process rights.**

Even if the *Zignego* plaintiffs could assert a sufficient interest, they have not shown that their interests would be impaired by their exclusion from this case. Plaintiffs do not seek an order invalidating the writ of mandamus or otherwise enjoining the state court proceedings, but rather an injunction barring deactivation of voters on the 2019 ERIC list until they are provided constitutionally-sufficient notice. If this Court enjoins deactivation until adequate notice is sent to voters, and if Defendants cannot comply with both the state court order and the federal court order, then the Commission simply must comply with the federal court order. But that is not because the federal court must address the same issues litigated in state court; to the contrary, the state court judge specifically indicated that Plaintiffs' due process concerns were not a part of that case and thus had to be litigated separately. Dkt. 11-7 at 30:21–31, 33:15–18, 35:7–9.

This case concerns the actions, conduct, and decisions of the Commission—specifically, its formulation of the ERIC letter, which wholly failed to alert voters that their registrations were at risk or include clear instructions or a deadline for voters to confirm or update their registrations. Any relief afforded Plaintiffs here will relate to prohibiting unconstitutional actions by the Defendants. Immediate purging, the *Zignego* plaintiffs' ultimate goal, cannot be ordered by this court and thus could not redress their asserted interests. Any relief granted *in this litigation* could not force the state to undertake a purge that it did not desire to pursue, and intervention in this case would not give the *Zignego* plaintiffs the ability to force the state to purge voters. Those questions are being litigated in state court.

**D. Intervention is untimely under these circumstances because this litigation is currently at a critical stage given the impending February primary elections.**

The *Zignego* plaintiffs' motion to intervene is untimely, because this case is already at a critical and urgent stage with the primary elections on February 18, 2020.  Any delay in these time-sensitive proceedings could result in the removal of hundreds of thousands of voters close to the election without adequate, pre-deprivation notice.  In addition, delay would force the League to divert further resources from its core mission and spend them on issues related to the purge.  Dkt. 12 ¶¶ 45–49.  Here, the *Zignego* plaintiffs cannot be permitted to cause undue delay by prolonging the preliminary injunction proceedings.  Such delay would prejudice both sets of existing parties by decreasing the amount of time Plaintiff League would have to assist voters before the February 18th elections if the injunction is denied and require the Defendants to purge and re-register voters while simultaneously administering elections.

### E.  The *Zignego* plaintiffs have failed to establish that DOJ's representation is inadequate.

The *Zignego* plaintiffs also argue that DOJ cannot adequately represent their proffered interests.  DOJ's filings today, specifically its motion to dismiss or, in the alternative, to stay this case on *Pullman* abstention grounds, as well as its brief in opposition to Plaintiffs' motion for a preliminary injunction, show that it shares the same goals as the *Zignego* plaintiffs: to dismiss or stay this action pending the resolution of the state court case, and to secure the denial of Plaintiffs' preliminary injunction motion.  *See* dkt. 42 at 2–4.  Both the *Zignego* plaintiffs and the Legislature have moved for dismissal or a stay of this action based on *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941), *see* dkt. 25 at 8–11; dkt. 38 at 25–27, and both have opposed the entry of a preliminary injunction, *see* dkt. 25 at 11–21; dkt. 38 at 47–54.  Any disagreements the proposed intervenor may have with DOJ's litigation strategy do not render its representation of their interests inadequate.  *Planned Parenthood of Wis.*, 942 F.3d at 801; *id.* at 808 (Sykes, J.,

concurring) ("[A] mere disagreement over litigation strategy is not enough to show inadequacy of representation.").

The *Zignego* plaintiffs also seek to defend the constitutionality of the 2019 ERIC letter—a defense the current Defendants are best situated to raise, since the letter was sent by the Commission, pursuant to a list maintenance process it developed, considered, adopted, and implemented beginning in June of last year. *See* dkt. 11-2 at 4–6. This is the same goal as Defendants, meaning that the presumption of adequate representation applies. *See Planned Parenthood of Wis.,* 942 F.3d at 798. This is especially true here because state law tasks DOJ with representing Defendants in this case. *Id.; see* Wis. Stat. § 165.25(6). Because Defendants and their counsel share the same goals as the *Zignego* plaintiffs and Defendants are charged by Wisconsin law with safeguarding the integrity of elections in Wisconsin, as well as facilitating and safeguarding the exercise of the right to vote, the *Zignego* plaintiffs must therefore show that DOJ has acted with gross negligence or in bad faith to rebut the presumption of adequate representation. *See Planned Parenthood of Wis.,* 942 F.3d at 798; *One Wis. Inst.,* 310 F.R.D. at 399 (citing *Ligas,* 478 F.3d at 774).

They cannot. Gross negligence encompasses willful and wanton misconduct, or a "conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party." *Negligence*, Black's Law Dictionary (11th ed. 2019). Bad faith involves "[d]ishonesty of belief, purpose, or motive." *Bad Faith*, Black's Law Dictionary (11th ed. 2019). Put simply, gross negligence and bad faith constitute misconduct, and there is no evidence that DOJ has engaged in any conduct that comes anywhere near that level of extreme dereliction of duty to represent any interests proffered by the proposed intervenors. DOJ's conduct indicates

25

that its office will zealously defend the constitutionality of the Commissioners' actions in this litigation.

To demonstrate that their interests allegedly diverge from DOJ's defense of the case, the *Zignego* plaintiffs rely on "Defendants' refusal to comply with Section 6.50(3)." *See* dkt. 22 at 16. That the *Zignego* plaintiffs and the state have a different interpretation of a state statute governing when removals must occur does not mean that DOJ will not vigorously defend the constitutionality of the 2019 ERIC letter in this litigation and oppose a finding of liability for their clients on these alleged due process violations.

This case concerns the actions, conduct, and decisions of the Commission—specifically, its formulation of the ERIC letter, which wholly failed to alert voters that their registrations were at risk or include clear instructions or a deadline for voters to confirm or update their registrations. Defendants are perfectly capable of defending the letter they and their agents wrote, approved, and distributed. It would be a strange result indeed for this Court to require Defendants to effectively accept representation it does not want, much less from a party that does not enjoy statutory authority to represent it in federal court. The *Zignego* plaintiffs may believe that DOJ should raise particular arguments or follow a particular legal strategy. But, again, such disagreements do not defeat the presumption of adequate representation. *See One Wis. Inst.*, 310 F.R.D. at 394 (quibbles with litigation strategy do not support intervention as of right) (citing *Wis. Educ. Ass'n Council*, 705 F.3d at 659). Indeed, the *Zignego* plaintiffs argued as much when Plaintiff LWVWI attempted to intervene in the state court litigation. *See* dkt. 11-7 at 28:6–12.

For these reasons, the *Zignego* plaintiffs should be denied intervention of right.

**II.  Permissive intervention should also be denied for the *Zignego* plaintiffs.**

Permissive intervention is inappropriate here. Most importantly, under the specific circumstances of this case, the motion will delay these proceedings.  In addition, the *Zignego* plaintiffs focus primarily on concerns regarding the state litigation and enforcement of the state court writ of mandamus, which distracts from and unnecessarily complicates this due process litigation.  *One Wis. Inst.*, 310 F.R.D. at 399-400.  Given that the *Zignego* plaintiffs' interests are adequately represented, allowing intervention would add nothing to the case and does not serve judicial economy.  *See Planned Parenthood of Wis.*, 942 F.3d at 804; *One Wis. Inst.*, 310 F.R.D. at 399.

**A. Permissive intervention is inappropriate because it will only delay adjudication of Plaintiffs' claims.**

Due to the nature of this case and the particularly swift resolution needed as to Plaintiffs' preliminary injunction motion, the *Zignego* plaintiffs' motion would unduly prejudice Plaintiffs here.  *See* Fed. R. Civ. P. 24(b)(1).  It appears likely that the *Zignego* plaintiffs' participation may impede rather than facilitate swift resolution of this case.

Neither Plaintiffs nor Defendants can afford delay.  Each day that passes between now and the February 18 elections without resolution leaves Plaintiffs Villarreal and Albrecht, as well as all voters on the 2019 ERIC list, in limbo as to the status of their rights.  Without a decision from this Court, Plaintiff LWVWI cannot be sure what instructions it should provide to voters to update or confirm their registration addresses, given the absence of clear instructions in the 2019 ERIC letter.  Delay of a resolution therefore shortens the time in which Plaintiff LWVWI will be able help voters protect their registrations, which in turn increases the number of volunteer hours and the amount of resources it will need to expend on voter outreach to ensure a rapid response.  *See* dkt. 8 ¶¶ 13, 17–18.  Defendants risk uncertainty and chaos in the administration of the February

and April elections and the voter rolls without a timely resolution. *Cf. Crawford*, 553 U.S. at 196 (states have an interest in "orderly administration and accurate recordkeeping" of voter rolls); *Purcell v. Gonzalez*, 549 U.S. 1, 6 (2006) (discouraging last-minute changes to election rules when elections are imminent). Adding more voices to this case threatens unnecessary delay and prejudice to the existing parties, especially given that the *Zignego* plaintiffs have filed a proposed Motion to Dismiss and would likely seek to modify the Court's schedule for the preliminary injunction motion.[11] *See One Wis. Inst., Inc.*, 310 F.R.D. at 399 (denying permissive intervention where "the nature of this case requires a higher-than-usual commitment to a swift resolution"); *Am. Assn. of People with Disabilities v. Herrera*, 257 F.R.D. 236, 259 (D.N.M. 2008) ("Because of the prejudice intervention at this time would cause to the Plaintiff and because the circumstances of the case warrant that additional parties be kept to a minimum, the Court will not permit the proposed 24(b) interventions, at least at this preliminary injunction stage."). In *American Association of People with Disabilities*, the Court found the impending election and the need for resolution of the preliminary injunction motion critical to the resolution of the motion to intervene. In denying the motion the Court noted that

> This case is very time sensitive, as the deadline for book-closing preceding the general election is fast approaching. With less than one month until the book-closing, the Court believes that it is important to avoid any unnecessary delays. Both sides may want to appeal an adverse judgment; if the Court grants the injunction, the Plaintiffs want as much time as possible to register voters before [the deadline].

257 F.R.D. at 259 (internal citation omitted). As in *Herrera*, there is a similar need to resolve Plaintiffs' preliminary injunction motion in light of the impending elections. Absentee ballots have already been mailed out for the special Congressional District 7 primary election scheduled

---

[11] Instead of an exhibit to the motion to intervene, the *Zignego* plaintiffs appear to have filed a standalone Motion to Dismiss. Plaintiffs treat the Motion as a proposed filing given the procedural posture of the case and the fact that the court has not allowed intervention.

for February 18, and absentee ballots for the spring primary election to be held on the same day are going to be mailed out starting on January 28.  Wis. Stat. § 7.15(1)(cm).

The scope of material facts at issue in this case is also limited.  These facts chiefly concern the actions of the Defendants, including the uncontroverted content of its 2019 ERIC letter.  The *Zignego* plaintiffs therefore add nothing to discovery in this matter and would needlessly complicate and prolong the litigation.  Therefore, granting intervention would not serve the interests of judicial economy.  *See One Wis. Inst.,* 310 F.R.D. at 399.

The importance of preventing the *Zignego* plaintiffs from slowing down this case is particularly acute in light of the fact that these disputes in state and federal court have arisen so soon before impending elections entirely because of the *Zignego* plaintiffs' own five-month delay in filing the state court litigation.  Had they initially filed their state court litigation in June, when the Commission adopted its 12-to-24 month maintenance timeline, resolution of all of the disputes in state and federal court—principally the meaning of Section 6.50(3) and what notice the Commission was required to give—could have been resolved well before the February 18th elections.  Instead, the *Zignego* plaintiffs did not file their case until November 13, 2019.

The *Zignego* plaintiffs protested vehemently against any intervention on timeliness grounds in their opposition to the LWVWI's motion to intervene in the state court litigation:

> [T]here are compelling reasons to deny the Petitioners' request to intervene. This suit is of a time-sensitive nature as it involves questions bearing upon elections occurring as soon as February of 2020.  Adding a third set of redundant briefing and argument will simply make more difficult the Plaintiffs' attempt to obtain the relief they seek with no clear benefit to the parties.

Dkt. 47-2 at 12.  Now that they are moving for intervention, they argue there is ample time to allow them to intervene, resolve this litigation, and issue a new notice: "The next election is not until February 18, so WEC has more than enough time to send this new notice, especially given that

29

they already have the list prepared and have done one mass mailing to it already." Dkt. 25 at 10. Apparently, according to the *Zignego* plaintiffs, the need for deactivation is urgent and must be accomplished immediately but providing notice to these voters is not urgent and, in their view, can be provided after deactivation and even mere days before the election. Plaintiffs disagree that this would satisfy the requirements of due process under the U.S. Constitution.

In addition, the *Zignego* plaintiffs argued in state court that the League's request for the court to consider its motion to intervene before the motion for temporary injunction "obviously risks delaying [the *Zignego* plaintiffs'] ability to obtain prompt resolution of this case." Dkt. 47-2 at 4. The February 18 election is now much closer than it was when the League's request was briefed weeks ago, when the *Zignego* plaintiffs were ostensibly concerned with the "time-sensitive nature" of the case. They should not now be permitted to disavow their representations to the state court because it suits their efforts to intervene in and slow down *this* case.

### B. The *Zignego* plaintiffs add nothing to this action and their participation does not promote judicial economy.

In support of their motion to intervene, the Zignego plaintiffs contend that "the arguments [they] will make regarding the content and timing of the notice to be given deactivated voters go to the heart of this action," but then go on to discuss "Defendants' current position regarding the meaning of Section 6.50(3)." *Id.* Their focus on state law interpretation demonstrates that they will distract from the core due process issues at stake in this case, diminishing judicial economy and efficient resolution of Plaintiffs' claims. *See One Wis. Inst.*, 310 F.R.D. at 399–400 (intervenors' raising of tangential arguments contributed to decision to deny permissive intervention). The *Zignego* plaintiffs also do not add value to this action because they cannot change the relief available here. *See Williams Island Synagogue, Inc. v. City of Aventura*, 222 F.R.D. 554, 557 (S.D. Fla. 2004) (denying permissive intervention despite proposed intervenor's

stake in the outcome of the litigation, because plaintiff sought injunctive relief of municipality's alleged violation of federal law governing only state actors).

The *Zignego* plaintiffs should be denied permissive intervention as well.

## III.   The Legislature has not satisfied the requirements for intervention of right.

In its Memorandum in Support of its Motion to Intervene, the Legislature relies heavily on Wis. Stat. § 803.09(2m) to argue that state law grants it the authority to represent the state's interest in this case.  Enacted in 2018, the Section 803.09(2m) modified the state's civil procedure rules to permit the Legislature to intervene in specific cases to represent its own interests.  It provides:

> When a party to an action challenges in state or federal court the constitutionality of a *statute*, facially or as applied, challenges a *statute* as violating or preempted by federal law, or otherwise challenges the construction or validity of a *statute*, as part of a claim or affirmative defense, the assembly, the senate, and the legislature may intervene as set forth under s. 13.365 at any time in the action as a matter of right by serving a motion upon the parties as provided in s. 801.14.

Wis. Stat. § 803.09(2m) (emphasis added).  In turn, Section 13.365 provides that "[t]he joint committee on legislative organization may intervene at any time in the action *on behalf of the legislature*."  *Id.* § 13.365(3) (emphasis added).  The Seventh Circuit has said that this statute does not excuse the Legislature from having to meet Rule 24(a)'s requirements, although it can "inform the Rule 24(a)(2) calculus."  *Planned Parenthood of Wis.*, 942 F.3d at 797.

In November 2019, the Seventh Circuit, reviewing this Court's denial of the Legislature's motion to intervene as a defendant in a challenge to the state's abortion regulations, held that the Legislature must show that it has an interest not currently represented by the parties.  *Planned Parenthood of Wis.*, 942 F.3d at 798.  The Court noted that the Legislature had proffered two separate interests: "the State's interests" and "its 'unique institutional interests' as a legislature."  *Id*.  As to the latter, the Court concluded the Legislature does not have an independent, institutional interest when seeking to intervene to defend statutes.  *Id*.; *see also Va. House of Delegates v.*

*Bethune-Hill*, 139 S. Ct. 1945, 1954 (2019) (state house of delegates could not represent state and had no independent interest on appeal in case involving enacted redistricting plan); *Hollingsworth v. Perry,* 570 U.S. 693, 707 (2013) (holding that group responsible for adoption of California's Proposition 8 could not represent the state on appeal where it lacked the necessary "personal stake" in the proceedings because its role had ended with proposition's adoption and because state law did not give it the authority to represent the state). As to the Legislature's argument that it could intervene to represent the State's interests, while the Seventh Circuit panel did say that it was "comfortable adopting the district court's *assumption* that § 803.09(2m) gives the Legislature standing as an agent of the State of Wisconsin," it never actually reached – much less decided – the question of whether the statute did in fact give the Legislature such standing, because they found that "the Legislature ha[d] failed to establish that the Attorney General is an inadequate representative of the State's interests." *Planned Parenthood of Wis.*, 942 F.3d at 798. "[B]ecause the Legislature ha[d] the burden of proving all four elements of intervention," the finding of adequate representation allowed the Court to avoid deciding whether Wis. Stat. § 803.09(2m) gave the Legislature standing to defend *the State's* interests. *Id.*; *Planned Parenthood of Wis.*, 384 F. Supp. at 988 ("Even *assuming* the Wisconsin legislature could point to a direct, unique interest implicated by this lawsuit, and that this lawsuit somehow threatens to impair that interest, the proposed intervenor's argument that defendants, including Attorney General Kaul, 'inadequately represent that interest' falls short.") (emphasis added).

Here, the Legislature is not entitled to intervene as of right because it has no interest in this case; any interest it may have would not be impaired if intervention is denied; and DOJ adequately represents the State's interest in this case.

**A. The Legislature cannot represent the State's interests and does not possess an independent, cognizable interest in this case.**

The Legislature has no interest in this lawsuit because Wis. Stat. § 803.09(2m) does not inform the Rule 24(a)(2) calculus in this case, and because the Legislature cannot demonstrate Article III standing.  By its plain language, Section 803.09(2m) gives the Legislature the right to intervene when a state statute has been challenged or its construction or validity are otherwise at issue, but Plaintiffs do not challenge a state statute; rather, they challenge the constitutional adequacy of the 2019 ERIC letter under the Due Process Clause.  Their due process claims stand *regardless* of how the state courts eventually interpret Section 6.50(3) because unlike the specific and narrow legal question presented there, the issue here is whether the October 2019 ERIC Letter *itself* provided voters with constitutionally adequate notice and the opportunity to protect their registrations before they were deactivated.  Thus, this action—unlike the state court action— challenges as unconstitutional an ***action*** of the Commission itself (sending the 2019 ERIC Letter), not the text or meaning of a state statute.  Because Plaintiffs do not challenge a state statute in this action, Section 803.09(2m) does not inform the Rule 24(a)(2) calculus as to whether the Court should grant the Legislature's motion to intervene.

For the sake of argument, even if this case did involve a challenge to a state statute, Section 803.09(2m) still only gives the Legislature the power to represent its ***own*** interests—not the ***State's*** interests as a whole.  The Seventh Circuit has already determined that when the Legislature seeks to intervene as of right in cases involving an enacted statute, it must plead some "unique" interest not represented by another party, separate from an interest it might raise in a "Legislature-as-legislature" capacity.  *Planned Parenthood of Wis.*, 942 F.3d at 798 (quoting *Wis. Educ. Assn Council v. Walker*, 705 F.3d 640 (7th Cir. 2013)).  Here, the Legislature claims that it wants to represent the State's interests.  But DOJ, through the Attorney General, represents the State in this

action, as Wisconsin law provides.  *See* Wis. Stat. § 165.25(6)(a)1. ("At the request of the head of any department of state government, the attorney general may appear for and defend any state department, or any state officer, employee, or agent of the department in any civil action or other matter brought before a court or an administrative agency which is brought against the state department, or officer, employee, or agent for or on account of any act growing out of or committed in the lawful course of an officer's, employee's, or agent's duties.").  To the extent that the Legislature wants to defend the State's interest in "orderly administration and accurate recordkeeping" of the state's voter registration list, *see* dkt. 36 at 6 (quoting *Crawford v. Marion Cty. Elections Bd.*, 553 U.S. 181 (2008)), Wisconsin law delegates that responsibility to the Defendants.  *See* Wis. Stat. § 5.05(15) ("The commission is responsible for the design and maintenance of the official registration list under s. 6.36. The commission shall require all municipalities to use the list in every election and may require any municipality to adhere to procedures established by the commission for proper maintenance of the list.").  Accordingly, the Legislature cannot speak for the state, Defendants, or even itself in this action.

The Legislature does not—and cannot—cite to any other "unique" interest that would satisfy the Article III standing requirement.  Indeed, in this case, the Legislature is no differently situated than a Wisconsin resident, in that it merely expresses a general interest in the enforcement of Section 6.50(3).  *Cf.  Hollingsworth*, 570 U.S. at 706 ("A litigant 'raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.'" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)).  Plaintiffs do not seek to indefinitely bar Section 6.50(3)'s enforcement, only to ensure that in carrying out any

required voter list maintenance activities, the Commission provides voters with the due process that the Constitution mandates before it deactivates the registration of any 2019 ERIC list voter. Even assuming Plaintiffs were challenging Section 6.50(3)—and they are not—the Legislature has no more interest in seeing the statute enforced than a Wisconsin resident. As such, it will not suffer any injury from an injunction directing Defendants to issue new, adequate notice before deactivation of any voter.

Again, this case concerns the Commission's actions—specifically, its drafting and sending the 2019 ERIC letter to more than 200,000 registered Wisconsin voters, which wholly failed to alert voters that their registrations were at risk of deactivation or to include clear instructions or a deadline for voters to confirm or update their registrations. It directly concerns the Defendants' conduct; presumably, they are in the best position to defend their decisions, and the Legislature has not advanced any evidence to suggest that the Commissioners are incapable of defending the constitutionality of *their own* actions. Finally, the Court should also give weight to the fact that Defendants oppose the Legislature's intervention in this case. Dkt. 46 at 3.

For all the foregoing reasons, the Legislature does not represent the State's interest in this case, nor can it show a sufficiently unique interest entitling it to intervention of right.

B. **The Legislature has not demonstrated that any identified interest would be impaired if this Motion were denied, as it has other avenues available to it to be heard on this dispute.**

Even assuming the Legislature can show an actionable interest, it has not shown that its interest will be impaired if the Court denies its Motion to Intervene because it retains the power to assert its interest through legislation. On December 2, 2019, the Commission voted 5-1 to direct "staff to pursue legislation establishing specific procedures governing the ERIC Movers mailing and/or granting rulemaking authority to the Commission." Dkt. 47-3 at 7. This directive goes to

35

the heart of the Legislature's fundamental function and institutional interests: legislating.  If the Legislature so chooses, it can have its say through the legislative process as to how Defendants should conduct the voter list maintenance process under the specific statute at issue in the state court litigation, and that it claims gives it an interest in this action, Section 6.50(3).[12]  Furthermore, Wisconsin law now requires the Attorney General to obtain the Legislature's approval before discontinuing or settling a case.  *See* Wis. Stat. § 165.25(6); *id* § 165.08(1).  Any interests it may be able to identify, then, are far from impaired by its exclusion from this litigation.

---

[12] Even if the Legislature sought to intervene here to represent its own interests, *i.e.*, "Legislature-as-legislature," that effort would be both misguided and superfluous.  At its December 2, 2019 meeting, the Commission considered recommendations prepared by Commission staff addressing "'options for clarifying the legal authority for, and/or seeking more specific legal authority related to, the treatment of voter registration records of those individuals included on the ERIC movers list.'"  Dkt. 47-5 ¶ 4 (citation omitted).  The Commission entertained a motion directing its staff "to pursue legislation establishing specific procedures governing the ERIC Movers mailing and/or granting rulemaking authority to the Commission."  *Id.* ¶ 5.  The Commission voted in favor of this recommendation the same day.  *Id.* ¶ 6.  At least some members of the Legislature were made aware of the Commission's request no later than December 5, 2019.  In a filing in the state court case on December 9, 2019, the *Zignego* plaintiffs submitted to the circuit court a letter written by two members of the Wisconsin State Senate, on letterhead reading, "Wisconsin Legislature," which on its face indicates it was hand-delivered to the Commission on December 5.  Dkt. 47-6.  Although the *Zignego* plaintiffs' characterization of this letter as "the legislative response to the [Commission's] request for legislative clarification" is an overstatement that has no validity in the law as an act of the Legislature itself, *cf. La Crosse Cty. v. Gershman, Brickner & Bratton, Inc.*, 982 F.2d 1171, 1174 (7th Cir. 1993) ("[A] court may not rely upon the testimony of members of a legislative body for the purpose of determining what that body intended when it enacted a particular piece of legislation."), certainly the letter demonstrates that members of the Legislature were aware by December 5 of the Commission's request that the Legislature act in its capacity as the legislature, that is to say, to act by exercising its power to promulgate legislation.  The Legislature chose not to do so, however, instead seeking to intervene in *this* action (though curiously, not in the state court action that is actually deciding the question posed by the Commission's December 2 request to the Legislature).  The Legislature's failure to act in its capacity as a *legislative* body, and instead to act as a *litigant* by seeking to intervene here, reveals that it is uninterested in answering the substance of the question the Commission posed about how Section 6.50(3) should be applied to the voters who received the 2019 ERIC Letter.  Its choice instead to litigate here reveals that the Legislature is interested only in the result of immediately stripping the 232,579 Wisconsin voters who received the 2019 ERIC Notice Letter of their registrations to vote, not in settling the question of the process the Commission must follow to act on the 2019 ERIC list.

**C. The Legislature has failed to establish that DOJ's representation is inadequate due to gross negligence or bad faith.**

There is no evidence DOJ has represented Defendants with gross negligence or in bad faith. The Legislature claims that, because it wants to defend the state trial court's interpretation of Section 6.50(3)—an interpretation that is not at issue in this case—and DOJ has defended the Defendants' reading of Section 6.50(3) in the state litigation—a reading which the state court rejected—the Legislature's goal in this case differs from DOJ's goal. This argument is without merit. In the state litigation, DOJ has not challenged or disputed Section 6.50(3)'s constitutionality or validity, but rather its application to the 2019 ERIC list. Further, the Legislature always has the authority to veto any plan by Defendants and DOJ to compromise, discontinue, or settle that case by conceding the statute's unconstitutionality or invalidity. *See id.* §§ 165.08(1), 165.25(6)(a)1. Nor have Defendants refused to enforce the statute once they have exhausted their appeals. Instead, DOJ has argued for a particular reading of the Section 6.50(3), presumably at the direction of their clients, who themselves are state officials tasked with representing the state's interest in implementing election laws. Their preferred interpretation did not prevail in the state trial court, but that does not discharge DOJ's duty to represent it on appeal. *See id.* § 165.25(1). Any refusal by DOJ to advocate for its clients' desired position would have not only violated its attorneys' ethical duties as their legal representative, but also state law. *See id.* § 165.25(6)(a)1.; Wis. Sup. Ct. R. Preamble, ¶ [2] ("As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system."). And that is the state court litigation. Here in federal court, it is clear that DOJ shares the same goals as the Legislature, to dismiss or stay this action pending the resolution of *Zignego*, and to secure the denial of Plaintiffs' preliminary injunction motion. Dkt. 42 at 2–4. Today, Defendants' counsel at DOJ have not just opposed Plaintiffs' preliminary

injunction motion but have moved to dismiss the case as unripe and stay the action in its entirety on *Pullman* abstention grounds.  *Id*.

Having established that DOJ and the Legislature share the same goal, the presumption of adequate representation therefore applies, and the Legislature must show that the DOJ's lawyers have acted with gross negligence or in bad faith.  It cannot, for the same reasons as the *Zignego* plaintiffs.  *See supra* at 24–26.  Additionally, the Legislature has argued that "if the Attorney General does not raise and zealously advocate for the many bases on which this lawsuit should be dismissed or, at the very minimum, stayed pending the completion of *Zignego* . . . that would plainly constitute 'bad faith or gross negligence.'"  Dkt. 36 at 12.  Defendants have done precisely that in their proposed Motion to Dismiss, or, Alternatively, For a *Pullman* Stay.  *See* dkt. 42.  At most then, this argument reflects a potential disagreement over litigation strategy—a far cry from gross negligence or bad faith, and inadequate grounds to overcome the presumption of adequate representation.

For these reasons, the Legislature cannot intervene as of right.

## IV.    The Legislature should also be denied permissive intervention.

The Legislature's request for permissive intervention should also be denied because its intervention would unduly delay these proceedings and prejudice the existing parties, and as with the *Zignego* plaintiffs, the issues the Legislature raises would distract from the core issues in the litigation and thus not serve judicial economy.  *See Planned Parenthood of Wis.*, 942 F.3d at 804; *One Wis. Inst.*, 310 F.R.D. at 399.

Here, the Legislature seeks to defend Section 6.50(3), but Plaintiffs do not challenge this law on its face or as applied or ask this Court to permanently bar its enforcement.  The state litigation surrounding the statute's meaning has certainly exacerbated the 2019 ERIC letter's

constitutional deficiencies and Plaintiffs' injuries by accelerating the deactivation timeline, but Plaintiffs do not allege that the state court interpreted the statute incorrectly; nor could they in a federal venue.  *Pennhurst*, 465 U.S. at 106.  As such, Section 6.50(3)'s meaning is not even a collateral issue to the question of whether the 2019 ERIC letter gave voters sufficient notice and opportunity to be heard.  That statutory construction question is entirely *irrelevant* to this case, and this determination was first reached by the state court in the course of its denial of Plaintiff LWVWI's request to join that litigation.

Under the specific circumstances of this case and considering the tangential state law issues the Legislature is raising, the Legislature's intervention would cause undue delay and prejudice to the existing parties and would make resolution of this case less efficient and economical.  The same arguments as to delay, prejudice, and judicial economy from the section responding to the *Zignego* plaintiffs' motion are incorporated here as well.  *See supra* at 27–31.  But with respect to the Legislature, there is an even greater likelihood that granting its motion to intervene will result in delay and prejudice, as well as inefficiency.  This Court has been given a preview of coming distractions in the Legislature's proposed motion to dismiss or stay this action.  The Legislature's brief in support of its proffered motion to dismiss contains, among others, the following meritless arguments: (a) the extraordinary argument that Wisconsin's voter registration rules and procedures need not be communicated to registered Wisconsin voters at all pre- or post-deactivation, because Wisconsin's election statutes "exist[ ]" and may be reviewed in publications containing the state's statutes, *see* dkt. 38 at 9, 45–46; (b) the novel argument that "Vote at the next election" in fact means "Re-register at the next election," *see* dkt. 38 at 38, 45; (c) an argument for dismissal based on the Anti-Injunction Act, without acknowledging that "the Supreme Court has held that . . . the Anti-Injunction Act . . . do[es] not generally apply to non-parties to the corresponding state court

litigation," as the *Zignego* plaintiffs do, *see* dkt. 38 at 23–24; dkt. 25 at 13 (citing, *inter alia*, *Lance v. Dennis*, 546 U.S. 459, 464 (2006)); (d) the erroneous statement that Plaintiffs never raised their due process arguments when seeking intervention in the state court litigation, *see* dkt. 38 at 22 ("Plaintiffs never fairly raised these federal Due Process Clause concerns in *Zignego*; the circuit court only denied intervention after they raised claims pertaining to the interpretation of Subsection 6.50(3)."); and (e) their citation to the National Voter Registration Act of 1993, 52 U.S.C. § 20501, from which Wisconsin is of course fully exempt, *see* dkt. 38 at 37; 52 U.S.C. § 20503(b)(2). This approach of throwing every conceivable argument against the wall, including the frivolous ones listed above, and seeing what sticks will undermine this Court's efficient resolution of a significant, time-sensitive dispute. The Court need not entertain such arguments. *See One Wis. Inst.*, 310 F.R.D. at 399–400.

## V. In the alternative, if permissive intervention is granted, the movants' participation should be limited.

Taken together, the relevant considerations in the context of this case, including those discussed, both with respect to the Motions to Intervene as of right and permissively, weigh against permitting movants to intervene in this litigation. Nonetheless, should the Court decide that intervention would be appropriate, Plaintiffs respectfully request that it limit intervenors' participation. *See Planned Parenthood of Wis.*, 942 F.3d at 804; *In re Discovery Zone Sec. Litig.*, 181 F.R.D. 582, 601 (N.D. Ill. 1998).

Therefore, their participation should be confined to filing a brief in opposition to Plaintiffs' Motion for Preliminary Injunction. This solution would allow the *Zignego* plaintiffs and the Legislature to make their concerns heard, without needlessly prolonging the litigation.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the *Zignego* plaintiffs' and the Wisconsin Legislature's motions to intervene as of right or on a permissive basis be denied in full.  Should the Court find permissive intervention appropriate, however, Plaintiffs respectfully ask the Court to curtail the scope of the intervenors' participation to prevent unnecessary delay and prejudice.  Though Plaintiffs have briefly responded to some of the proposed intervenors' arguments for dismissing or staying this action, if intervention is granted, Plaintiffs would respectfully request the opportunity to fully brief their opposition to the motions attached to the motions to intervene.

**DATED:** January 10, 2020

Respectfully submitted,

*/s/ Michelle Kanter Cohen*
Michelle Kanter Cohen
D.C. Bar No. 989164
Cecilia Aguilera
D.C. Bar No. 1617884
Jon Sherman
D.C. Bar No. 998271
FAIR ELECTIONS CENTER
1825 K St. NW, Ste. 450
Washington, D.C. 20006
jsherman@fairelectionscenter.org
caguilera@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
(202) 331-0114

Douglas M. Poland
State Bar No. 1055189
David P. Hollander
State Bar No. 1107233
RATHJE WOODWARD LLC
10 E Doty Street, Suite 507
Madison, WI 53703
Phone:  608-960-7430
Fax:  608-960-7460
dpoland@rathjewoodward.com
dhollander@rathjewoodward.com

*Counsel for Plaintiffs*