IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF WISCONSIN, PATRICIA ANN VILLARREAL, SASHA ALBRECHT, <br><br>         Plaintiffs, <br><br>         v. <br><br> DEAN KNUDSON, JULIE M. GLANCEY, ROBERT F. SPINDELL, JR., MARK L. THOMSEN, ANN S. JACOBS, MARGE BOSTELMANN, in their official capacity as members of the Wisconsin Elections Commission, MEAGAN WOLFE, in her official capacity as the Administrator of the Wisconsin Elections Commission, <br><br>         Defendants. | 19-cv-1029-jdp |

**CORRECTED PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## INTRODUCTION

Defendants have moved to dismiss this case, arguing that Plaintiffs' claims are not yet ripe for review because, they posit, the Wisconsin Elections Commission has not decided that it will deactivate the registrations of the two individual Plaintiffs and more than 200,000 other registered Wisconsin voters on the 2019 Electronic Registration Information Center ("ERIC") list ("the 2019 ERIC list" or "ERIC list"). However, the weight of the available evidence belies this assertion, and as Plaintiffs demonstrate below, their claims do not depend on any future, contingent events. Consequently, the Plaintiffs' claims are ripe for adjudication, and the Court should deny the Motion to Dismiss. In the alternative, Defendants request that this Court enter a

stay. As communicated in a previous submission to this Court, Plaintiffs have no objection to the Court holding the case in abeyance until the completion of the proceedings in the related state court litigation, or the Commission otherwise votes to deactivate the 2019 ERIC list voters.

## FACTUAL BACKGROUND

On June 11, 2019, the Wisconsin Elections Commission ("WEC" or "Commission") considered how to use the list of Wisconsin voters it received from ERIC, identifying Wisconsin voters who may have moved, in its process of maintaining an accurate list of voters currently registered to vote in Wisconsin. *See* dkt. 11-4 at 6. For the Commissioners' consideration, Meagan Wolfe, the Commission's Administrator, prepared a memorandum in which she and staff proposed that the Commission adopt a list maintenance timeline that would require election officials to send letters to voters on the list (referred to as "Movers") in August 2019 and provide them with six elections to respond. *See* dkt. 11-2 at 4–6. Officials would then deactivate the registrations of voters who either did not respond to the letter within that timeframe or vote in any of the subsequent six elections. *Id.* at 5. Under a section entitled "FUTURE ERIC PLANS," the June 2019 Commission memorandum on the ERIC list stated that:

> instead of deactivating their voter registrations within approximately 30 days under Wis. Stat. § 6.50(3), deactivation would take place between 12 months and 24 months, giving the Movers a chance to vote in both the General and following Spring Election. To reiterate the process provided in the March ERIC memo, this means voters who receive the Movers postcard in the summer of 2019 would be able to affirm their registration, either by responding to the postcard or in-person at a polling place, until the summer of 2021, giving them an extended deadline of six elections to take action (Feb, April, August and November of 2020 and February and April of 2021).

*Id.* at 4. It continued:

> This timeline allows flagged voters time to affirm their registration at their current address, or reregister at a new address, well in advance of the 2020 election cycle. Voters who receive the Movers postcard in the summer of 2020 would also be able to affirm their registration until the summer of 2021, giving them four elections to take action (August and November of 2020 and February and April of 2021). Postcards returned as

undeliverable would be noted by clerks in WisVote as undeliverable for data gathering purposes, but the voter would otherwise continue to follow the same procedure as any other voter identified as an in-state mover and their registration would remain active until the deadline for instate mover deactivation 12-24 months later.

*Id.* at 5. The memo concluded with the following recommended motion: "Authorize staff to flag files of voters rather than deactivating voters who do not respond to a Movers mailing after 30 days; go forward with WisVote, poll book and MyVote updates; and assess new data before initiating future mailings." *Id.* at 6. The Commissioners unanimously voted to adopt the motion with amended language, so as to "[a]uthorize staff to flag files of voters rather than deactivating voters who do not respond to a Movers mailing after 30 days; go forward with WisVote, poll book and MyVote updates; assess new data before initiating future mailings; *incorporate the substance of recommendations in the staff memorandum*; and authorize staff to proceed with the next Movers letter in August 2019." Dkt. 11-4 at 6 (emphasis added).

Election officials sent the letter approved by the Commission to ERIC list voters (the "2019 ERIC letter" or "ERIC letter") between October 9 and 11, 2019. Dkt. 11-3 at 2. The letter outlined three ways for voters to update their registration if they had moved: (1) online on WisVote, (2) on Election Day at the voter's polling place, or (3) by submitting a paper registration form to the voter's municipal clerk. Dkt. 11-4 at 9. The letter also told voters that if they had *not* moved, they could confirm their address (1) online at WisVote, (2) by "Vot[ing] at the next election", or (3) by signing and returning to the municipal clerk's office a detachable postcard at the bottom of the letter. *Id.* The postcard read: "I, [voter's name], certify I still live at [voter's address] and want to *keep my voter registration active* in Wisconsin." *Id.* (emphasis added).

On November 13, 2019, three Wisconsin voters sued the Commission in state court, urging the court to find that the 2019 ERIC list constituted "reliable information" within the

3

meaning of Wis. Stat. § 6.50(3), thereby triggering the removal of voters who failed to respond to the ERIC letter within 30 days. Dkt. 11-6. The state court agreed and issued a writ of mandamus, ordering the immediate removal of these voters, as the 30-day period had already run. Dkt. 11-8. After the state court refused to permit the League of Women Voters of Wisconsin ("LWVWI") to intervene, in part to raise procedural due process claims, LWVWI and two Wisconsin voters filed two due process claims in this Court on December 17, 2019. Dkt. 1.

On January 10, 2020, Defendants moved to dismiss this case, or, in the alternative, stay the proceedings under the *Pullman* abstention doctrine.[1] Dkts. 41, 42. Defendants argue that Plaintiffs' claims should be dismissed on ripeness grounds for two reasons. **First**, Defendants claim that

> the Commission did not adopt those recommendations [i.e., the staff recommendations made in Administrator Wolfe's memo] in whole, but rather approved a motion that only "[a]uthorize[d] staff to flag files of voters rather than deactivating voters who do not respond to a Movers mailing after 30 days; go forward with WisVote, poll book and MyVote updates; and assess new data before initiating future mailings."

Dkt. 42 at 5; *see also id.* at 5 n.2. They state that, "Apart from that order, the Commission has never approved a deactivation plan based on the most recent ERIC data, whether immediately, within 12 to 24 months, or otherwise." *Id.* at 11. Based on Defendants' view of the Commission's actions at its June 11, 2019 meeting, Defendants argue that deactivations are only certain to occur if the state appellate courts uphold the state circuit court's writ of mandamus. *Id.* at 10–11. Defendants also suggest that the Commission's decision on December 2, 2019 to

---

[1] Both proposed intervenors here, the three plaintiffs in the *Zignego* state court action and the Legislature, have filed motions to dismiss. Pursuant to this Court's orders, Plaintiffs do not respond at this time to the merits of the proposed intervenors' motions to dismiss because the motions to intervene have not yet been granted. *See* dkts. 30, 40.

consult the Legislature[2] effectively reversed any deactivation policy it may have adopted on June 11, 2019. *Id.* at 11.[3]

**Second**, Defendants state that "even if deactivations might occur, it is not yet clear what notice would accompany them." *Id.* at 12. Plaintiffs' claims lack ripeness, they say, because Plaintiffs "point to no definite plan for procedures to accompany that action that can be analyzed now." *Id.* at 13.

As for their request in the alternative to stay these proceedings, Defendants assert that, because the Commission has not authorized and does not intend to authorize the deactivation of any voters on the 2019 ERIC list, Plaintiffs' due process claims hinge on the resolution of the state court litigation concerning the meaning of Wis. Stat. § 6.50(3), and that abstention would therefore be appropriate under *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496 (1941). *Id.* at 14-19.

On January 13, 2020, the Wisconsin Supreme Court denied a petition to bypass filed by the plaintiffs in the state litigation. The following day, the District IV Court of Appeals granted the Commission's requests to stay the writ of mandamus and the contempt order entered by the circuit court on January 13. Plaintiffs subsequently moved this Court to hold this case in abeyance. Dkt. 52.

---

[2] Specifically, the motion adopted on December 2, 2019 reads: "The Commission directs staff to pursue legislation establishing specific procedures governing the ERIC Movers mailing and/or granting rulemaking authority to the Commission." Dkt. 47-3 at 7.

[3] To date, Defendants have received no official communication from the Legislature, though they received a letter from the authors of the statute mandating the Commission's participation in ERIC that describes their legislative intent. Dkt. 47-6 at 4-5. The Legislature has not passed any legislation instructing the Commission on how to use the ERIC list data or granting the authority requested by the Commission. Instead, it has sought to intervene in this action to provide a "vigorous defense" of Section 6.50(3), as interpreted by the Ozaukee County Circuit Court. Dkt. 36 at 6.

## LEGAL STANDARD

"Ripeness and other justiciability requirements bar a federal court from deciding a question that depends on so many future events that a judicial opinion would be 'advice about remote contingencies.'" *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 378 (7th Cir. 2019) (quoting *Rock Energy Co-op v. Vill. of Rockton*, 614 F.3d 745 (7th Cir. 2010)). "The doctrine's underlying objective is to avoid premature adjudication and judicial entanglement in abstract disagreements." *Church of Our Lord and Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 676 (7th Cir. 2019). In assessing the ripeness of a plaintiff's claims, courts must evaluate "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (citing *Abbott Labs v. Gardner*, 387 U.S. 136 (1967)); *Texas v. United States*, 523 U.S. 296, 301 (1998).

"The various factors that enter into a court's assessment of fitness include: whether the claim involves uncertain and contingent events that may not occur as anticipated or at all; the extent to which a claim is bound up in the facts; and whether the parties to the action are sufficiently adverse." *Philadelphia Fed'n of Teachers v. Ridge*, 150 F. 3d 319, 323 (3d Cir. 1998). "[L]egal questions are 'quintessentially fit' for judicial decision." *E.F. Transit v. Cook*, 878 F.3d 606, 610 (7th Cir. 2018) (quoting *Metro. Milwaukee Ass'n of Commerce v. Milwaukee Cty.*, 325 F.3d 879 (7th Cir. 2003)). By contrast, a claim is not fit for judicial decision when the possibility that the alleged injury will occur remains "remote." *Amling*, 943 F.3d at 378; *cf. Clapper v. Amnesty Internat'l USA*, 568 U.S. 398, 409 (2013) (holding that "'[a]llegations of *possible* future injury' are not sufficient." (quoting *Whitmore v. Arkansas*, 495 U.S. 149 (1990)) (emphasis in original)); *E.F. Transit*, 878 F.3d at 610 ("But the potential for prosecution

must be likely; if a prosecution is unlikely or not even 'remotely possible,' then the dispute is not 'susceptible to resolution by a federal court.'" (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979))).

Plaintiffs can show that failure to exercise jurisdiction will result in hardship where "(1) enforcement is certain, only delayed, *or* (2) even though enforcement is not certain, the mere threat of future enforcement has a present concrete effect on [the plaintiff's] day-to-day affairs and 'irremediably adverse consequences' would flow from a later challenge." *Metro. Milwaukee Ass'n of Commerce*, 325 F. 3d at 882 (internal citations omitted) (emphasis added). However, this prong of the ripeness test "is less clear and less important." *Nat'l Park Hospitality Ass'n*, 538 U.S. at 815 (Stevens, J., concurring); *cf. Owner Operated Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 586 (7th Cir. 2011) ("[A]s *Abbott Laboratories* itself demonstrated, hardship need not take the form of an actual enforcement action; the threat of enforcement is sufficient because the law is in force the moment it becomes effective and a person made to live in the shadow of a law that she believes to be invalid should not be compelled to wait and see if a remedial action is coming.").

## ARGUMENT

As a threshold matter, Plaintiffs do not oppose Defendants' alternative motion to stay this case until the conclusion of the *Zignego* case through all appeals or the Commission votes to deactivate the 2019 ERIC list voters. Although Plaintiffs do not believe the *Pullman* abstention doctrine applies in this case because their claims do not hinge upon the outcome of the state court proceedings or the construction or validity of any state statute, those proceedings will nonetheless provide greater clarity as to which deactivation timeline governs this case, and thus will clarify the timing and nature of relief needed. *See generally* dkt. 52; *see also St. Augustine*

7

*Sch. v. Evers,* 906 F.3d 591, 600 (7th Cir. 2018) ("The *Pullman* doctrine aims to avoid an unnecessary adjudication of the constitutionality of a state statute. Its purpose is not served unless there is 'some risk that the statute will be found unconstitutional unless narrowed.'" (quoting *Mazanec v. No. Judson-San Pierre Sch. Corp., 763 F.2d 845* (7th Cir. 1985))); *Fuentes v. Cortes*, 207 F. Supp. 3d 441, 452 (M.D. Pa. 2016) (explaining that, for *Pullman* to apply, "[f]irst, there must be uncertain issues of state law underlying the federal constitutional claims. Second, the state law issues must be amenable to a state court interpretation which could obviate the need to adjudicate or substantially narrow the scope of the federal constitutional claim. Third, it must be that *an erroneous construction of state law by the federal court* would disrupt important state policies." (quoting *Planned Parenthood of Cen. N.J. v. Farmer*, 220 F.3d 127 (3d Cir. 2000)) (emphasis added)). Even if *Pullman* did apply here, "a lawsuit is typically stayed—not dismissed—under *Pullman*." *Doe v. McColloch*, 835 F.3d 785, 787 (8th Cir. 2016); *see id.* at 788-89 ("Rather than dismissing the case, however, the district court instead should have retained jurisdiction and stayed the proceedings while the parties litigate the state-law questions in the Missouri state courts.").

Turning to the Defendants' Motion to Dismiss, under the applicable two-factor standard set forth above, Plaintiffs' claims are ripe for review. As discussed below, Defendants' Motion to Dismiss fails for three reasons. **First**, their arguments and the assertions on which they rely contravene the record evidence. **Second**, the deactivation of unresponsive 2019 ERIC list voters is certain to occur within 12 to 24 months after the initial mailing and in violation of these voters' rights to due process, thus creating a hardship to Plaintiffs if the court does not exercise jurisdiction. And **third**, Plaintiffs' due process claims are fit for judicial decision because they do not depend on any contingent, future events. Rather, they present pure questions of law.

8

### I. Defendants' assertions about the status of the deactivations are not supported by the available evidence.

Defendants' Motion to Dismiss challenges this Court's jurisdiction on the grounds that Plaintiffs' claims are not yet ripe because, in their view, the Commission neither adopted the procedures and timeline discussed in the June 11, 2019 memo nor approved the deactivation of unresponsive ERIC list voters after the April 2021 elections. However, the record before the Court does not support this theory.

*First*, the Commission first adopted the 12-to-24-month deactivation policy at its June 11, 2019 meeting. Under Section II of the June 11, 2019 memo, which was entitled "FUTURE ERIC PLANS," Administrator Wolfe and staff proposed that the Commission wait 12 to 24 months and six elections before deactivating any voters on the 2019 ERIC list. Dkt. 11-2 at 5. The Commission's staff recommended the adoption of the entirety of this new deactivation procedure and timeline; the recommended motion to "[a]uthorize staff to flag files of voters rather than deactivating voters who do not respond to a Movers mailing after 30 days" succinctly summarized and incorporated the entirety of Section II's description of the new deactivation policy. Dkt. 11-2 at 4–6. Defendants point to the recommended motion on the last page of the June 11, 2019 memo for the proposition that they did not adopt the memo's procedure and timeline, or approve the recommended deactivations in spring 2021. Dkt. 42 at 5; dkt. 11-2 at 6. However, they overlook their own meeting minutes, which were approved at the Commission's September 24, 2019 meeting and reflect that the Commission incorporated the staff's full recommendations in its motion and adopted them:

> Authorize staff to flag files of voters rather than deactivating voters who do not respond to a Movers mailing after 30 days; go forward with WisVote, poll book and MyVote updates; assess new data before initiating future mailings; *incorporate the substance of recommendations in the staff memorandum*; and authorize staff to proceed with the next

9

>Movers letter in August 2019. Moved by Commissioner Thomsen, seconded by Commissioner Glancey. Motion carried unanimously.

Dkt. 11-4 at 6 (emphasis added); *see also* dkt. 11-2 at 5 (recommending deactivation of unresponsive ERIC list movers after 12 to 24 months).

***Second***, the video recording of the Commission's June 11, 2019 meeting corroborates the conclusion that Defendants incorporated the entirety of the "Future ERIC Plans" proposal in Administrator Wolfe's June 11, 2019 memo—including its recommendation that unresponsive ERIC list voters be deactivated on a 12-to-24-month timeline—into the motion the Commission adopted on June 11, 2019. In response to questions about the scope of the proposed motion provided at the end of the memo, Administrator Wolfe explained, "Our intention was to ask the Commission to adopt this proposal that included the timeline that's outlined on the top of page 4 [of the memo, dkt. 11-2 at 5] as well, in terms of when that integrated poll list would be used and when the deactivation would occur."[4] After lengthy discussion of the proposed deactivation timeline,[5] the Commissioners unanimously adopted "the recommended motion on page 14 [of the agenda items, dkt. 11-2 at 6], *incorporating the substance of the memo. . .*"[6] Commission Chairman Knudson clarified that the motion included giving voters the proposed "number of elections" to respond to the ERIC letter.[7] During the Commission's recent meeting on January 14, 2020, Chairman Knudson confirmed that the motion adopted by the Commission in June of 2019 authorized the Commission both to send letters to voters on the 2019 ERIC list, and to

---

[4] *See* Wisconsin Elections Commission June 2019 Meeting—Part 1, WISCONSIN EYE (Jun. 11, 2019), https://wiseye.org/2019/06/11/wisconsin-elections-commission-june-2019-meeting-part-1/, at 2:16:00-2:16:20. Plaintiffs request that this Court take judicial notice of the contents of the video accessed at this URL. Under Federal Rule of Evidence 201(b)(2), this video's "accuracy cannot reasonably be questioned."
[5] *See generally id.* at 1:35:00-2:23:59.
[6] *Id.* at 2:21:31 (emphasis added).
[7] *Id.* at 2:22:06.

remove voters who did not respond to the ERIC letter: "But June 11th—that June 11th, our action and our adopted motion was definitely that they'd have this period of time to vote using the watermark, and then would be deactivated."[8]

***Third***, the language of the ERIC letter further reflects an intent to deactivate voters, where it provided recipients the option of signing and returning a statement that read: "I, [voter's name], certify I still live at [voter's address] and want to keep my voter registration active in Wisconsin." Dkt. 11-4 at 9. Although this statement was completely inadequate to put voters on notice that their registrations were at risk of deactivation, it creates a reasonable inference that the Commission intended that failure by a voter to confirm the voter's address would result in the voter's registration becoming *inactive*—that is, deactivated. It is unreasonable to believe Defendants would include such language in the 2019 ERIC letter if deactivation were not the intended consequence of failing to respond.

The record therefore makes clear that Defendants ***did*** adopt the 12-to-24-month deactivation timeline, as well as the spring 2021 deactivation of voters who do not respond to the 2019 ERIC letter within that timeframe. Thus, the ERIC letter's failure to adequately warn voters of their impending deactivations, and to identify clear instructions and the timeline for responding, represents a current and ongoing violation of the Due Process Clause. Because ERIC list voters must be afforded 12 to 24 months and six elections to confirm or update their voter registrations under the procedures and timeline adopted by the Commission on June 11, 2019, ***now*** is the very time in which these voters must confirm and update their registrations. That is

---

[8] Wisconsin Elections Commission January 2020 Meeting—Part 2, WISCONSIN EYE (Jan. 14, 2020), https://wiseye.org/2020/01/14/wisconsin-elections-commission-january-2020-meeting-part-2/, at 37:19-37:32. Plaintiffs request that this Court take judicial notice of the contents of the video accessed at this URL. Under Federal Rule of Evidence 201(b)(2), this video's "accuracy cannot reasonably be questioned."

why due process required the Commission to provide adequate notice and instructions on how and by when these voters must take action to prevent deactivation at the ***beginning*** of this 12-to-24-month period. Notice at some later date will not suffice. Defendants' assertion that the Commission may in the future "accompany" deactivation with notice is therefore wholly without merit and does not make this action unripe. Dkt. 42 at 13. For these reasons, the Court should reject the theory offered by Defendants in their brief and deny their Motion to Dismiss.

**II.     Plaintiffs' due process claims are ripe because eventual voter registration deactivations are certain to occur and because their claims present pure questions of law that do not rely on contingent events.**

For the same reasons, Plaintiffs' due process claims are ready for review. As established above, the Commission ***did*** approve the deactivation of ERIC list voters in 2021 at its June 11, 2019 meeting. The Commission's December 2, 2019 request for clarifying legislation or rulemaking authority did not vacate or nullify the adopted June 11, 2019 motion because the Legislature has made clear that it supports the circuit court's interpretation of Section 6.50(3) and will not enact the requested legislation. Dkt. 36 at 6. Therefore, until Defendants adopt another resolution overturning the adopted policy to deactivate voters in 2021, that policy continues to have full legal effect.[9] Plaintiffs' claims, therefore, do not rely on some uncertain event in the future. Indeed, as noted above, the ERIC letter's failure to adequately warn voters of their impending deactivations, and to identify clear instructions and the 12-to-24-month timeline for responding, represents a current and ongoing violation of the Due Process Clause. It has been three and a half months since the 2019 ERIC letters were mailed out, and now is the time in which these voters must confirm and update their registrations. Notice at some later date will not

---

[9] Defendant Commissioner Spindell conceded as much when he observed that adopting a new motion to issue a second ERIC letter that contained the information requested by Plaintiffs in Section (d)(2) of their requested relief, dkt. 1 at 29, would moot this action. *Wisconsin Elections Commission January 2020 Meeting—Part 2*, at 9:07-9:14, 9:50-10:34, 13:23-13:51.

suffice. Absent constitutionally-sufficient notice, deactivation without due process will occur either immediately after a final state court order affirming the writ of mandamus, or in the spring of 2021, if the order granting the writ of mandamus is vacated and the writ dissolved. But while the ultimate harm is that future deactivation, the due process violation has already occurred and is ongoing. In this way, Plaintiffs have met the hardship prong of the ripeness test because the deactivations are certain to occur, and the failure to provide adequate notice in advance of the pre-deactivation waiting period has already occurred. *See Metro. Milwaukee Ass'n of Commerce*, 325 F. 3d at 882.

Plaintiffs also satisfy the fitness prong because their claims do not depend on "uncertain and contingent events that may not occur as anticipated or at all." *Philadelphia Fed'n of Teachers*, 150 F. 3d at 323. Again, the Commission did authorize the removals and removal procedures when it adopted the June 11, 2019 motion incorporating Administrator Wolfe's memo and its 12-to-24-month deactivation timeline. Defendants have already issued the 2019 ERIC letter, consistent with those procedures. *See* dkt. 11-2 at 4-5; dkt. 11-4 at 9. According to the adopted policy, voters now have until the April 2021 Spring Election to confirm or update their registration addresses, unless the state appellate courts hearing the *Zignego* case require their removal under Section 6.50(3) prior to that date. *See id.* at 5. Thus, ultimate removal is certain; the only remaining factual question is when that removal will occur—in 2020, pursuant to a state court order, or spring 2021, pursuant to the timeline Defendants adopted on June 11, 2019.

Relying on the argument that they never approved the deactivations or deactivation procedures, Defendants fail to identify any additional, necessary events that must occur before the Court can address Plaintiffs' claims. They cannot identify any such events, because none

13

exist. Voters will either be deactivated this year, pursuant to a state court order, or in spring 2021, consistent with the Commission's adopted procedures. *See id.* The only disputed questions that remain are questions of law: whether the 2019 ERIC letter gave ERIC list voters constitutionally-adequate notice before deactivation of their registrations, and whether it led them to detrimentally rely on its representations as to how they could preserve their registration status. An answer to these questions by this Court would not constitute an advisory opinion. Plaintiffs contend that under ***either*** a 30-day or 12-to-24-month period prior to deactivation, Defendants have violated the Due Process Clause by failing to inform voters who received the 2019 ERIC letter that they were facing deactivation if they failed to respond, and to provide them with unambiguous instructions for preventing deactivation and the timeline for that deactivation. Plaintiffs' claims are therefore ripe, and the Court may exercise jurisdiction over this case.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' claims are ripe for review. Accordingly, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss. Plaintiffs do not interpose any objection to this Court holding the case in abeyance until such time as the *Zignego* litigation has concluded through all appeals or the Commission otherwise votes to deactivate the 2019 ERIC list voters.

DATE: January 31, 2020　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Cecilia Aguilera*

　　　　　　　　　　　　　　　　　　　　　　　Cecilia Aguilera
　　　　　　　　　　　　　　　　　　　　　　　D.C. Bar No. 1617884
　　　　　　　　　　　　　　　　　　　　　　　Michelle Kanter Cohen
　　　　　　　　　　　　　　　　　　　　　　　D.C. Bar No. 989164
　　　　　　　　　　　　　　　　　　　　　　　Jon Sherman
　　　　　　　　　　　　　　　　　　　　　　　D.C. Bar. No. 998271
　　　　　　　　　　　　　　　　　　　　　　　FAIR ELECTIONS CENTER
　　　　　　　　　　　　　　　　　　　　　　　1825 K St. NW, Ste. 450

14

Washington, D.C. 20006
caguilera@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
jsherman@fairelectionscenter.org
Tel.: (202) 331-0114

Douglas M. Poland
State Bar No. 1055189
RATHJE WOODWARD LLC
10 E. Doty Street, Suite 507
Madison, WI 53703
dpoland@rathjewoodward.com
Tel.: (608) 960-7430
Fax: (608) 960-7460

*Counsel for Plaintiffs*